FIRST STATE BANK OF THOMPSON FALLS, APPEL-
LANT, *v.* LARSEN, RESPONDENT.

(No. 4,947.)

(Submitted November 23, 1922. Decided December 18, 1922.)

[211 Pac. 214.]

*Promissory Notes—Defenses—Novation—Burden of Proof—
Evidence — Insufficiency — Witnesses — Credibility — Trial
—Appeal—Instructions—Law of Case.*

Instructions—Law of Case.
  1. An instruction not objected to by either party is the law of the case, whether right or wrong; hence, where in an action on two promissory notes the court without objection instructed the jury that the defense of novation interposed to both notes applied only to one of them, appellant was in no position to urge error in this regard.

Promissory Notes—Novation—Burden of Proof.
  2. In an action on promissory notes the defense to which was novation, the defendant had the burden of proving that the payee bank agreed to release him from all liability on the notes, to accept the

---

2. Whether release of original debtor may be established by implication, see note in **Ann. Cas.** 1912D, 508.

[65 Mont. 404.]

alleged new debtor as its debtor instead of defendant, that the alleged new debtor agreed to pay the bank the amount owing upon the notes, and that the defendant to whom the new debtor was indebted released the latter from payment of an amount equal to the total due on the notes.

Same—Novation—Evidence Held Insufficient as Improbable.
3.   Evidence of defendant introduced to show novation reviewed, and *held* so improbable as to deny it credence.

Appeal—Conflict in Evidence—Rule Inapplicable Where Evidence of Prevailing Party Improbable.
4.   The rule that where there is a conflict in the evidence the verdict will not be disturbed on appeal has no application where the verdict is founded upon testimony of the prevailing party the inherent improbability of which is such as to destroy the testimony itself.

Trial—Witnesses—Credibility.
5.   A court is not bound by mere swearing, creditable swearing only concluding its judgment.

*Appeals from District Court, Sanders County; James M. Self, Judge.*

·   Action by the First State Bank of Thompson Falls against L. C. Larsen.   Plaintiff appeals from the judgment rendered against it and from an order denying its motion for a new trial.   Reversed and remanded for new trial.

Cause submitted on brief of Appellant.

*Mr. A. S. Ainsworth,* for Appellant.

"The burden of establishing a novation is upon the party who asserts its existence." (*Netterstrom* v. *Gallistel,* 110 Ill. App. 352; *Brown* v. *Coffee,* 17 Cal. App. 381, 121 Pac. 309.)   Novation being an affirmative defense, it is incumbent upon the respondent to prove its existence by competent evidence.   "In order to constitute novation, there must be either an express or implied agreement on the part of the creditor to substitute the new debtor in place of the original debtor, and also an express or implied agreement to release and discharge the original debtor." (*Klinkoosten* v. *Mundt,* L. R. A. 1918B, 111; *Kelso* v. *Fleming,* 104 Ind. 180, 3 N. E. 130; *Piehl* v. *Piehl,* 138 Mich. 515, 101 N. W. 628; *Lowe* v.

3.   Rule applied in appellate court as to setting aside verdict contrary to the evidence, see note in **Ann. Cas.** 1912D, 1231.

*Blum,* 4 Okl. 260, 43 Pac. 1063; *Roberts* v. *Samson,* 50 Neb. 745, 70 N. W. 384; *Cornwell* v. *Megins,* 39 Minn. 407, 40 N. W. 610; *Carpy* v. *Dowdell,* 131 Cal. 495, 63 Pac. 778; 20 R. C. L. 366, 369.)

Just what caused the jury to find for respondent is not, of course, a matter to be here discussed, but we believe we are safe in saying that it was not upon the evidence in the case. This court in the case of *McAllister* v. *McDonald,* 40 Mont. 375, 20 Ann. Cas. 429, 106 Pac. 882, cites with approval the case of *Wunderlich* v. *Palatine Ins. Co.,* 104 Wis. 395, 80 N. W. 471, wherein the court said: "When it appears that the trial court has sustained a verdict upon testimony contrary to the great weight of the evidence, and which is impeached or rendered improbable by other conceded facts in the case, or is against all the reasonable inferences or probabilities of the aggrieved party," the judgment cannot be sustained. Also in the case of *Hamilton* v. *Monidah Trust et al.,* 39 Mont. 269, 102 Pac. 335, this court said: "If the court was of the opinion that the evidence in weight did not justify the verdict, it was its duty to grant a new trial."

It seems to us that the language expressed in the two foregoing opinions is certainly applicable to this cause, for what little testimony there is as to a novation is contrary to the great weight of the evidence, and is rendered improbable by the subsequent acts of the parties.

MR. CHIEF COMMISSIONER LEIPER prepared the opinion for the court.

This action is brought for the purpose of recovering from the defendant upon two promissory notes which are set forth in the complaint. The complaint is in the usual form. Paragraph 2 of the answer is as follows: "Admits the execution of the notes described in the complaint." Paragraph 3 of the answer is as follows:

"Further answering the defendant alleges, that on or about the time said notes were due plaintiff and defendant orally

entered into an agreement in substance as follows: That the plaintiff would accept, and did accept, in full payment of said notes a certain account, amounting to about $460, which the defendant held against a certain partnership then doing business in Thompson Falls, Sanders county, Montana, composed of Earl Good, —— Pritchard and —— Ross; that the defendant agreed to turn over, and did turn over said account to plaintiff; that this agreement was made in the presence of the said Earl Good, —— Pritchard and —— Ross, and that they, and each of them, in consideration of defendant's refraining from enforcing collection on said account at that time, promised and agreed to pay the amount of said account to this plaintiff; that the plaintiff thereupon agreed to, and did release this defendant from all liability upon said notes.'' The reply puts in issue the affirmative matter contained in the answer.

The notes sued upon were introduced in evidence as Exhibits 1 and 2. Exhibit 1 is for the sum of $50 and is dated January 30, 1916, payable to plaintiff, due in one year from date, bearing interest at one per cent per month, payable quarterly, and contains the usual provisions relative to attorney's fees in case of suit thereon. Exhibit 2 is for the sum of $210 and is dated May 4, 1915, payable to plaintiff, due sixty days after date. The provisions therein as to interest and attorney's fees are the same as those in Exhibit 1. Both notes are signed by the defendant.

At the conclusion of the testimony, counsel for plaintiff moved for a directed verdict as to Exhibit 1, which motion was granted, and verdict was rendered accordingly. A judgment in favor of plaintiff for $80.40, that being the amount of the principal and interest owing upon Exhibit 1, together with $50 attorney's fees, was duly entered. The jury returned a verdict as to Exhibit 2 in favor of defendant. Judgment thereon was entered accordingly. Plaintiff duly filed its bill of costs, as did also defendant; each claiming the costs expended. Motions were made by each party to the

action to retax costs. The court made its order denying costs to either party. Plaintiff (appellant herein) duly filed its motion for a new trial, which was overruled. These appeals are from the judgment rendered against plaintiff on the second cause of action (this being the cause of action predicated upon Exhibit 2) and from the order denying its motion for a new trial. The grounds stated in the motion for a new trial are: "(1) Irregularity in the proceedings of the court; (2) irregularity in the proceedings of the jury, by which plaintiff was prevented from having a fair trial; (3) insufficiency of the evidence to justify the verdict; (4) errors in law occurring at the trial, and excepted to by the plaintiff; (5) that the verdict is against law."

Counsel for appellant contends in his brief that "It appears to us impossible for respondent to try and separate the issues in this case, and to attempt to have novation apply to one note and not to the other, would be something like trying to have separated the Siamese twins; they would not survive the ordeal." The criticism merited by this argument is that an operation was successfully performed on the twins (the two notes) by the court through the giving of instruction No. 5, and counsel for both parties consented to this operation (to the giving of this instruction), for no objection was made to it, and the twins did survive the ordeal, for we now have one twin in the form of a judgment for the plaintiff and the other twin in the form of a judgment for the defendant. Instruction No. 5 is, in part, as follows: "That the defense of novation applies simply to the $210 note." Right or wrong, this instruction became the law of the case. (*Bush* v. *Chilcott*, 64 Mont. 346, 210 Pac. 907; 14 R. C. L. 822.)

The only assignment which we deem it necessary to consider is whether the evidence is sufficient to sustain the verdict and judgment. It is incumbent upon the defendant to prove by a preponderance of the evidence the defense of novation.

The defendant testified that he was indebted to the plaintiff upon the two notes in question; that a short time before the notes fell due, he went to plaintiff's place of business and informed witness Barto (who is president of the plaintiff bank) that the copartnership, composed of Good, Pritchard and Ross, was indebted to him in the sum of about $460, and that he (defendant) was going to sue and attach the stock of lumber and merchandise owned by the copartners; that Barto advised against bringing suit and suggested that defendant see these persons and ascertain whether an adjustment of the matter could not be made; that defendant then went to the three copartners and they came to plaintiff bank with the defendant; that the agreement set forth in the answer was then and there entered into, Good, Pritchard and Ross agreeing to pay the amount of the notes to the bank, and Barto, acting for the plaintiff bank, agreeing that the bank would accept the three copartners as its debtors in lieu of defendant, and further that after the notes and interest thereon had been paid in full, then the balance, when collected, would be turned over to defendant. The defendant does not state definitely the year in which this conversation occurred, but he does state positively that he was only in the plaintiff bank upon one occasion when all of these men were present, and it is fairly inferable from all of defendant's testimony that this conversation occurred in the latter part of June or the fore part of July, 1915. Defendant further testified that there was but one such conversation had. Defendant himself was the only witness to testify in his behalf, and since the defense of novation is in nowise aided by the testimony offered by plaintiff, defendant's cause must stand or fall upon his testimony and the admissions contained in the answer.

Barto testified in substance that defendant, Good, Pritchard and Ross came to plaintiff's bank in June or July, 1915; that a conversation was then had relative to the notes owing by defendant to the bank, and also concerning the account

owing by the copartners to defendant; that defendant requested Barto to take over the partnership account held by the defendant against the copartners, in lieu of defendant's indebtedness to the bank, but that Barto refused absolutely to do this, and that he then told defendant that the bank would take the account for collection and that if he could collect it the amount collected would be applied on the notes owing by defendant to the bank, and that after full payment of these notes the balance collected would be remitted to defendant. Both Good and Ross testified in behalf of plaintiff, and their testimony corroborates Barto in all, or practically all, particulars. It is admitted that the notes remained in the possession of the plaintiff bank; also, that at the time the alleged agreement was entered into, the $50 note (Exhibit 1) was unsecured, but that the plaintiff held a chattel mortgage covering two mules owned by defendant, as security for the payment of Exhibit 2; that after the conversation above noted was had between the five men in the bank, the defendant purchased some merchandise from the copartners and that the purchase price thereof was credited to defendant by the copartners, and that thereafter $12.80 was paid by the copartners to the bank as part payment of the account owing to defendant by the copartners, and that this amount was credited as interest on Exhibit 2. Barto further testified, and it is undisputed, that at the time of such conversation in the bank, plaintiff held a mortgage on all of the stock of goods owned by Good, Pritchard and Ross, in the sum of $2,500; that this mortgage was given as security for indebtedness of the copartners to the bank, and that the total value of the entire stock of goods of the copartners was of a value less than the amount of the mortgage; also, that Exhibit 1 was a renewal of a note given on June 30, 1915, and that Exhibit 1 was given six months after the conversation had in the plaintiff's bank between the witness, defendant, Good, Pritchard and Ross. It affirmatively appears, therefore, from the undisputed testimony, that the agreement relied upon by the

[65 Mont. 404.]

defendant, if any was ever made, was entered into in June or July, 1915, and about six months after the execution of Exhibit 1.

Section 7460, Revised Codes of 1921, provides: "Novation is the substitution of a new obligation for an existing one."

Section 7461 provides: "Novation is made:

"1. By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation;

"2. By the substitution of a new debtor in place of the old one, with intent to release the latter; or,

"3. By the substitution of a new creditor in place of the old one, with intent to transfer the rights of the latter to the former."

Section 7462 provides: "Novation is made by contract, and is subject to all the rules concerning contracts in general." (*Kirkup* v. *Anaconda Amusement Co.,* 59 Mont. 469, 17 A. L. R. 441, 197 Pac. 1005.)

In order to prevail, the defendant must have proven by a **[2]** preponderance of the evidence that at the meeting of the five men in the plaintiff bank, in June or July, 1915, it was agreed on the part of the plaintiff bank that the defendant was released from all liability under the two notes, plaintiff's Exhibits 1 and 2, and that the plaintiff accepted the copartners as its debtors instead of the defendant; also, that the copartners agreed to pay to the bank, instead of to the defendant, the amount owing upon the two notes, and that the defendant released the copartnership from the payment of an amount of the account equal to the amount of the two notes and interest.

A careful examination of the testimony of Barto, Good and **[3]** Ross discloses that it is improbable that any contract such as is alleged by the defendant was made, for Barto, Good and Ross deny positively that any such agreement was entered into by either the copartners or the bank; the notes remained in the possession of the bank, and it is undisputed that the copartnership was then indebted to the bank in an

amount greater than the total value of the stock of goods owned by it, and that the bank held a mortgage upon all of this property as security for such indebtedness, and that at the same time plaintiff held a mortgage on a team of mules owned by defendant as security for the payment of Exhibit 2. The defendant's testimony reveals that it was not only improbable that such a contract was made, but that it is utterly impossible that any such agreement was entered into, because Exhibit 1 was not then in existence. It appears from the testimony of the witness Barto that Exhibit 1 is a renewal of a note given on June 30, 1915; neither will it answer for us to say that the defendant is mistaken when he says that Exhibit 1 was one of the notes referred to at the time the contract was made in the plaintiff bank, and that defendant intended to say that it was the note of which Exhibit 1 was the renewal, because we then have the defendant, six months later, renewing an obligation to the plaintiff for the payment of which he claims to have been relieved absolutely.

When there is a conflict in the testimony, it is for the [4, 5] jury to determine what is the fact. But in this case there is no conflict upon the material facts. The admissions contained in defendant's answer, considered with his testimony, are sufficient to defeat his cause. This court, in speaking of facts very similar to those in this case, said: "It is true that the jury are the judges of the facts, and that, when there is a substantial conflict in the testimony, it is for the jury to resolve that conflict. But, when the jury bases its findings upon testimony as to impossibilities, there is not a conflict, and the jury are simply finding a verdict upon no testimony; and, when there is no testimony to support the verdict, it is the duty of the district court to set it aside. In *Blankman* v. *Vallejo*, 15 Cal. 646, it was said: 'We do not understand that the credulity of a court must necessarily correspond with the vigor and positiveness with which a witness swears. A court may reject the most positive testimony, though the witness be not discredited by direct testimony

impeaching him or contradicting his statements. The inherent improbability of a statement may deny to it all claims of belief.' (Quoted in *Landsman* v. *Thompson*, 9 Mont. 191, 22 Pac. 1148. See, also, *Newell* v. *Whitwell*, 16 Mont. 243.)'' (*Nelson* v. *Big Blackfoot Milling Co.*, 17 Mont. 553, 44 Pac. 81.) And again: ''It was for the trial court to determine the credibility of the defendant in the first instance, and, unless his testimony is characterized by such inherent improbability as in effect to destroy the testimony itself, this court will not interfere.'' (*Parchen* v. *Chessman*, 53 Mont. 430, 164 Pac. 531.) And again: ''Juries may not arbitrarily and capriciously disregard testimony of witnesses, not only unimpeached in any of the usual modes known to the law, but supported by all the circumstances in the case.'' (*Haddox* v. *Northern Pac. Ry. Co.*, 43 Mont. 8, 113 Pac. 1119.)

What is said by this court in the case of *Casey* v. *Northern Pac. R. Co.*, 60 Mont. 56, 198 Pac. 141, is peculiarly applicable to the testimony of the defendant in this case: ''The inherent improbability of his story may deny it all claims to respect. (*McIntyre* v. *Northern Pac. Ry. Co.*, 56 Mont. 43, 180 Pac. 971; *Landsman* v. *Thompson*, 9 Mont. 182, 22 Pac. 1148; *Mattock* v. *Goughnour*, 11 Mont. 265, 28 Pac. 301.) The credulity of courts is not to be deemed commensurate with the facility or vehemence with which a witness swears. 'It is a wild conceit that any court of justice is bound by mere swearing. It is swearing creditably that is to conclude its judgment.' (*The Odin*, 1 Rob. Adm. 248; *Daniels* v. *Granite Bi-Metallic Co.*, 56 Mont. 284, 184 Pac. 836.) It cannot be unfair to this plaintiff to deal with his case from the standpoint of his own statements. A party testifying in his own behalf has no right to be deliberately self-contradictory, and whenever he is so the courts are justified in judging his case from that version of his testimony which is least favorable to him. (*Atlanta R. etc. Co.* v. *Owens*, 119 Ga. 833, 47 S. E. 213.) In his testimony given upon the trial of this case the plaintiff contradicted himself repeatedly; contradicted the al-

legations of his verified complaint; was contradicted by his previous statements, by the physical facts, by every one of defendant's witnesses, and by his own witness, Marchington. Some of his declarations are too transparent to be entitled to credence, are improbable upon any supposition short of actual mental imbecility.''

We are of the opinion that the trial court erred in denying plaintiff's motion for a new trial, and we therefore recommend that the judgment and order appealed from be reversed and the cause remanded to the district court of Sanders county for a new trial.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed and the cause is remanded for a new trial.