KENISON, Appellant, *v.* ANDERSON, Respondent.

(No. 6,339.)

(Submitted December 5, 1928.   Decided December 19, 1928.)

[272 Pac. 679.]

*Mr. John Collins, Mr. C. W. Robison* and *Messrs. Hurd, Rhoades, Hall & McCabe,* for Appellant, submitted a brief; *Mr. George E. Hurd* argued the cause orally.

*Messrs. Gilbert, Gilbert & McFadden* and *Messrs. Gunn, Rasch, Hall & Gunn,* for Respondent, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action for recovery of damages for alleged breach of contract for purchase of property.

Plaintiff was the owner of a lot of ranch land, holding certain forest grazing permits, in addition, and owner of a lot of livestock on the land, together with ranch equipment; the whole thereof constituting a livestock ranch, stocked and equipped.

April 19, 1918, plaintiff agreed to sell all of the foregoing mentioned property to defendant and the latter agreed to buy the same at the agreed price of $123,156. The agreed terms of payment were as follows: $25,000 to be paid at time of sale; $10,000 on or before August 15, 1918; $10,000 on or before October 15, 1918; $5,000, October 15, 1919; $5,000, October 15, 1920; $5,000, October 15, 1921; $5,000, October 15, 1922; and the balance of the deferred payments, on or before October 15, 1923; all deferred payments to draw interest at the rate of seven per cent. per annum. Promissory notes, providing for such rate of interest, were to be given for all deferred payments, being all other than the first payment, that of $25,000.

April 19, 1918, plaintiff and defendant executed and signed a sort of preliminary memorandum agreement, in writing, as evidence of the contract of sale, therein designating the land sold as 1040 acres of land, without describing it, and specifying the personal property and giving the terms of sale and schedule of payments.

April 26, 1918, the memorandum agreement was supplemented by a formal written contract, more comprehensive, executed and signed by plaintiff and defendant. The contract recited the sale, the consideration ($123,156), described the land, specified the personal property, gave the terms of sale and method of payment. It declared the balance due to be $98,156, as evidenced by a series of notes executed by defendant. It provided that a deed of the land, executed by

plaintiff and his wife, should be placed in escrow in the First National Bank of Dillon, Montana, together with the notes of defendant, and that the bank should deliver the deed to defendant, his heirs or assigns, upon full payment of all of his notes, according to the tenor thereof; otherwise, the deed to be returned to plaintiff. Time was declared to be of the essence of the contract. Upon the day of the execution of all thereof, April 26, 1918, the deed and notes and a copy of the contract were placed in the bank mentioned. Thereupon, the property was delivered to defendant and he took possession of all thereof.

The foregoing narrated facts are alleged in the complaint. Then there follow other allegations necessary to plead breach of contract by defendant, i. e., that plaintiff was at all times ready, willing and able to perform the terms and provisions of his agreements and had performed all preceding conditions of the agreements to be performed by him; that defendant had paid upon the purchase price the sum of $50,000, with all interest due to June 10, 1919, on all of his notes save one (payable October 15, 1923) and had paid $1,000, to apply on the interest due on it, and had paid no more; that defendant had failed to pay the installment ($5,000) due October 15, 1920; that about November 1, 1920, plaintiff demanded payment thereof, whereupon defendant declared he would not pay it nor would he make any further payment nor perform further the terms of the contract; that thereafter the bank delivered to plaintiff his deed and plaintiff resumed possession of the land and a part of the personal property, such as could be recovered. Loss of some of the personal property and depreciation in the value of the land, with damage to plaintiff, are pleaded. Copies of the memorandum agreement, contract and deed are attached to and made parts of the complaint. The action was instituted October 14, 1925.

The answer admits the sale; admits execution of the memorandum agreement, the contract, the deed, and the placing in escrow of all thereof; admits transfer of possession to

defendant; denies upon information and belief a number of the allegations of the complaint; admits the making by defendant of certain payments and denies the alleged making by him of certain other payments; admits that he did not pay the installment due October 15, 1920; denies that he refused further performance or was asked to perform further the terms of the contract. It is then alleged that on June 10, 1919, with the knowledge, consent and approval of plaintiff, defendant sold, transferred and assigned to one Dansie all of his right, title and interest in and to all of the property and delivered possession of all thereof to Dansie, who, with the knowledge, consent and approval of plaintiff, assumed the payment to plaintiff of all amounts yet to be paid and of all of defendant's unpaid notes and promised to pay the same, which promise plaintiff accepted, and that plaintiff substituted Dansie in place of defendant as the purchaser of the property and as the person solely liable for the payment of all amounts then unpaid. Surrender to plaintiff of his escrow deed is admitted. Denial is made of any loss of property, depreciation in value or damage.

In a further answer and as an affirmative defense, defendant sets up more specifically and in detail sale and delivery by him, with the consent and approval of plaintiff, after certain payments made, of all of the property to Dansie; Dansie's taking over of the property and assumption, with the consent and approval of plaintiff, of all payments thereafter to be made and of all of defendant's unpaid notes and Dansie's promise, in consideration of defendant's release therefrom, to pay the same and the acceptance by plaintiff, in consideration of such transfer, of such promise and his agreement to look to Dansie alone for such payment and the substitution of Dansie for defendant, by mutual agreement of plaintiff, defendant and Dansie. It is alleged that thereafter plaintiff had no dealings with defendant but recognized and dealt with Dansie as the substituted purchaser and received and accepted from him, as the purchaser, payments.

It is plain that defendant undertook to plead and we think he does plead, in his further answer, novation of obligation. He then pleads rescission and termination of contract by mutual consent of plaintiff and Dansie and release of Dansie by plaintiff of all liability thereunder and surrender of the property by Dansie, in pursuance thereof, to plaintiff and acceptance by the latter.

A reply denies substantially all of the new matter alleged in the answer or the further answer.

At the trial, a jury was waived and the action was tried to the court. Thereafter, the court made findings of fact favorable to defendant and therefrom drew conclusions of law in favor of defendant and, in accordance therewith, rendered judgment for defendant. Plaintiff appealed therefrom and assigns a number of specifications of error.

Each of the specifications, save the last, refers to a particular finding or conclusion of the trial court and assigns thereto error, because of the assertion that the finding or conclusion is not supported by the evidence and the evidence preponderates against it. The last specification is to the effect that the court erred in rendering its judgment, because the judgment is not supported by the evidence and the evidence preponderates against it. Thus, the appeal is based solely upon the contention that the trial court's decisions are not supported by the evidence and the evidence preponderates against them. Therefore, we address ourselves to consideration of that contention. It required careful, painstaking study of the record and that has been given. The entire record has been read carefully and discussed and much of it, read several times.

The briefs of counsel devote some space to discussion of the sufficiency or insufficiency of the pleadings but there is no assignment or cross-assignment of error in relation thereto and, as the case is presented to us, it was tried upon the theory that the pleadings were sufficient and upon appeal they are

to be deemed sufficient, no exception thereto being taken by assignment of error.

It is plain not only that defendant pleaded novation but that the trial court decided there was a novation. Defendant, by his answer and further answer, having admitted the contract and pleaded novation, it was incumbent upon him to prove it by a preponderance of the evidence. (*First State Bank* v. *Larsen*, 65 Mont. 404, 211 Pac. 214.) Evidently, the trial court held that he did so. That being the case, first we seek to learn what is novation and how it may be effected.

"Novation is the substitution of a new obligation for an existing one." (Sec. 7460, Rev. Codes, 1921.) "Novation is made: (1) By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation; (2) by the substitution of a new debtor in place of the old one, with intent to release the latter; or (3) by the substitution of a new creditor in place of the old one, with intent to transfer the rights of the latter to the former." (Sec. 7461, Rev. Codes, 1921.) It is manifest that the novation relied upon in this instance is of that character provided in the second subdivision of the section last cited, i. e., "by the substitution of a new debtor in place of the old one, with intent to release the latter."

Next we seek to ascertain how novation may be proven. "Novation is made by contract and is subject to all the rules concerning contracts in general." (Sec. 7462, Rev. Codes, 1921.) To constitute a novation by substitution of debtors, there must be a mutual agreement between the three (or more) parties involved and "the creditor must have consented to the discharge of the original debtor and have accepted the promise of the new debtor. It is not essential that the assent to and acceptance of the terms of novation be shown by express words to that effect but the same may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter." (*McAllister* v. *McDonald*, 40 Mont. 375, 106 Pac. 882.) A nova-

tion, like other valid contracts, must be supported by a consideration, which may be the discharge of the original debt or the release of the original debtor. (Id.) Proof of novation may be by parol. (29 Cyc., 1139.)

. Guided by the foregoing stated rules, we turn now to the evidence, to see if it is sufficient to sustain the findings, conclusions and judgment.

In his specifications of error assigned, plaintiff takes exception to each of the trial court's four conclusions of law. However, in our opinion, if the evidence may justify each and all of the court's findings of fact, that would justify the court's conclusion of law numbered 1, which is, in effect, that there was a novation by substitution of debtors and that thereby defendant was released; and, in that event, the judgment should be affirmed, regardless of whether or not the remainder of the conclusions be justified, for the reason that if there was a novation by substitution of debtors, as the facts found indicate, conclusion of law numbered 1 follows as a matter of law and is correct and sufficient and defendant was released from his debt and it matters not what effect the release of Dansie, referred to in the succeeding conclusions, may have had and whether or not it served to release defendant, already released by the novation, provided, of course, there was one. Therefore, our work is confined now to the task of seeing if the findings of fact are sustained by the evidence, for, if so, conclusion of law numbered 1 must follow, and regardless of other conclusions, the judgment is sustained by the evidence.

. In this case there is a decidedly sharp conflict of evidence and much of it. On a number of vital points the evidence is absolutely contradictory and irreconcilable.

Unless testimony be inherently improbable or unbelievable ▌ (*Moelleur* v. *Moelleur*, 55 Mont. 30, 173 Pac. 419; *First State Bank* v. *Larsen*, supra), "with questions of the mere weight of evidence in substantial conflict and the comparative credibility of witnesses this court, as an appellate tribunal, has

nothing to do." (*Chicago Title & Trust Co.* v. *O'Marr,* 25 Mont. 242, 64 Pac. 506; *Goldsmith* v. *Murray,* 48 Mont. 337, 138 Pac. 187.)

This action, an action at law, having been tried to the ▮ court and there being a substantial conflict in the evidence, the decision of the trial court may not be disturbed if there be any substantial evidence to sustain it. (*Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968; *Teagarden* v. *Calkins,* 55 Mont. 35, 173 Pac. 549.) As to that, let us see.

The transactions of the three parties, plaintiff, defendant ▮ and Dansie, were conducted in a loose, slip-shod manner. in their dealings, none of them seemed to have consulted with a legal practitioner. They had all of their papers drawn by a real estate agent. Each of them appears to have looked to the late Hon. B. F. White, former Governor of Montana and then president of the First National Bank of Dillon, for financial backing; business advice and legal counsel. Governor White, who died before the time of the trial, appears to have been the backer, adviser and counselor of all of them. Out of it all, it was for the trial court to say what, as shown by the evidence, was their intent.

If the testimony of plaintiff, with what little corroboration he had, upon the question of novation *vel non,* is to be accepted, it may be the trial court could well have decided there was not a novation, although we find in plaintiff's testimony some evidence of novation. If, however, we accept as true the testimony of defendant and his witnesses, Dansie, his assignee, and Johnson, who drew all of the agreements and contracts between the parties involved, the case assumes a very different aspect.

Taking as true the testimony of the three parties last mentioned, as did evidently the trial court, we get from the record the following facts:

Defendant made his deal with Dansie. While negotiations were under way, each spoke about it to plaintiff and he told defendant to "turn the place over to Dansie and he would

take Dansie on the notes"; "*agreed to take Dansie instead of me*" (defendant); when Dansie spoke to plaintiff about it, the latter gave his consent; Dansie assumed payment of defendant's unpaid notes and agreed to pay them and plaintiff gave his approval. All three of them went then to the First National Bank and jointly talked over the matter with Governor White. Defendant informed White, in the presence of plaintiff and Dansie, of the deal and said plaintiff had consented to have Dansie take over the place. White said to plaintiff, "I guess it is up to me and you to *carry* Dansie"; again, "I guess it is up to me and you to *take care of* Dansie." Plaintiff said "that was all right" and that it "suited" him. All three of the visitors entered into the discussion with White. It was agreed and understood that defendant was to pay everything due to June 10, 1919 (which he did), and Dansie was to pay plaintiff all the balance. Plaintiff, defendant and Dansie went then to the office of A. S. Johnson, real estate agent, and discussed with him the drawing of a contract of sale from defendant to Dansie. As in the first instance, two papers were executed and signed by defendant and Dansie: first, a sort of memorandum agreement; second, a formal contract. In each of them it was stipulated and provided that Dansie assumed and would pay to plaintiff all of defendant's unpaid notes to plaintiff. Plaintiff was present on those occasions and was consulted and understood and approved of all that was done; he participated in the discussions and assented to the deal. The agreement and the contract were put in evidence. The property was delivered then by defendant to Dansie, who paid defendant the consideration agreed upon by them and took possession. Thereafter, plaintiff paid no attention to defendant and had no further dealings with him; defendant made no further payments; was not asked for any; he did not know plaintiff looked to him for anything until litigation was instituted. While plaintiff testified that later he asked defendant to take back from Dansie the property and that defendant refused to do so, defendant

positively denied it or that he ever was asked to take it back. After taking possession of the property, Dansie, upon different occasions, through the bank, made to plaintiff payments of principal and interest on the obligation assumed by him and plaintiff acknowledged them and thanked Dansie for them. At times, plaintiff reminded Dansie of money due and asked him for it but not defendant, any more. Later, Governor White advised Dansie to turn back the property to plaintiff, as Dansie, the Governor said, was doing no good with it. Dansie objected but the Governor insisted on it and told Dansie if he would do it he would be "released from everything." Dansie consulted plaintiff about it and told him what White had said about Dansie being "released from everything" and plaintiff assented. It was understood he would be released. Thereupon, Dansie did return to plaintiff all of the property except the forest grazing permits, of some value, which he withheld until he might procure a written release, demanded by him. Later, he was given by plaintiff such a release, introduced in evidence, and then he surrendered and had transferred to plaintiff the permits.

On cross-examination, defendant, Dansie and Johnson, from whom were elicited the foregoing fact statements, were each asked some respective impeaching questions about certain purported statements by each, contrary to his testimony or against defendant's interest. These they severally denied having made. In rebuttal, witnesses testified those parties did make the statements in question. That, of course, was a conflict of evidence, along with other conflicts, to be determined by the trial court.

There was no testimony, none even by plaintiff, that, after the transfer of the property from defendant to Dansie, plaintiff asked defendant for any more payments and, according to plaintiff, when Governor White told him he must take back from Dansie the property, plaintiff, who objected to taking it back, went to defendant and urged him to take back from Dansie the property but even then, according to plain-

tiff, he did not demand of defendant the delinquent payments which Dansie had failed to make but merely insisted that defendant take over the matter from Dansie, take it off his hands. It is significant that when Governor White, the adviser and backer of all of the parties, often consulted by them, who knew undoubtedly the nature and details of all of their agreements and undertakings, decided that Dansie was not doing any good with the property he told plaintiff that he, not defendant, must take back from Dansie the property. It would appear therefrom that White knew that by mutual consent of the three parties involved Dansie had been substituted for defendant, as the purchaser of the property, and that defendant was out of it.

It would be useless to dwell further upon the mass of evidence in the record, some of which is immaterial and much of which is repetition and reiteration. All of the foregoing narrated testimony and more to sustain the trial court may be found therein. Suffice to say that, in our opinion, there is much evidence to show that the transfer from defendant to Dansie was made with the consent and approval of plaintiff; that he agreed and intended to look thereafter to Dansie alone for payment of defendant's unpaid notes and did so and treated defendant as being out of the matter and absolved from all liability and released and that he accepted Dansie as a substituted debtor. While it may be questioned if the record discloses any positive, express, specific words of release by plaintiff of defendant from his liability and acceptance of a substituted debtor, to which we do not assent, yet, in the language of this court in the cases of *McAllister* v. *McDonald,* supra, we hold, at any rate, that "from the facts and circumstances of the transaction and the conduct of the parties thereafter" the trial court was justified in implying such intent and understanding. In our opinion, there is ample evidence of novation and, therefore, substantial evidence to support the trial court's findings and its conclusion numbered 1 and the judgment.

Counsel for plaintiff, in their brief, contend, as they did in oral argument, that the testimony of defendant, as well as that, in part, of Dansie, inherently, is "highly improbable" and, therefore, unbelievable and in that connection strongly stress the case of *First State Bank* v. *Larsen,* supra. We do not agree with the contention. In the case last mentioned, one involving alleged novation, this court held that the testimony of the defendant therein was not only improbable but that it was "utterly impossible" for it to be true, and therefore, unbelievable. There is nothing of the kind here. We see nothing improbable or unbelievable in the testimony of defendant or in any part of Dansie's testimony.

Respective counsel cite many cases involving alleged novation, to show what has been held to constitute or not constitute novation; what may or may not be novation. All have been examined but we do not find anything in any of them to cause us to deviate from the views we have expressed. It has been said that no will has a brother. The same thing might well be said of novation. It would be hard to find two cases, involving alleged novation and dependent upon circumstances, exactly alike. Each case must be decided largely on its own facts.

Counsel for defendant devote much of their brief to an argument that, if there was not a novation, the sale and assignment by defendant to Dansie resulted in making Dansie the principal obligor to plaintiff and defendant, a guarantor; and that, when the principal was released, without the consent of the guarantor, the latter (defendant) was released. As the trial court decided there was a novation and as we hold that decision justified, it is not necessary to consider the argument just mentioned.

Counsel for plaintiff devote much of their brief to a discussion of the circumstances under which Dansie obtained his written release from plaintiff and the nature of the release and contend it is not a release from liability to plaintiff on account of plaintiff's dealings with defendant and does not

absolve the latter. As we have held the trial court was justified in deciding there was a novation and uphold it in doing so, the novation, by operation of law, absolved defendant and it matters not what is meant by the written release given Dansie nor what its effect and it matters not that Dansie obtained any release; defendant was already and theretofore had been released.

For the reasons herein given the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.