SMITH, APPELLANT, *v.* BLAINE COUNTY ET AL., RESPONDENTS.

(No. 7,508.)

(Submitted March 9, 1936. Decided March 26, 1936.)

[56 Pac. (2d) 179.]

*Mr. Harry L. Burns,* for Appellant, submitted a brief and argued the cause orally.

*Mr. D. J. Sias,* for Respondents, submitted a brief.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, Emma Smith, has appealed from a judgment in favor of the defendants, Blaine county, its board of commissioners, treasurer and clerk, entered in an action instituted by her to compel the cancellation of a certificate of tax sale issued to the county in January, 1915, for property now owned

by her.  The appeal presents the sole question of the suffi-
ciency of the evidence to warrant the court's finding that the
taxes levied on the property for the year 1914 were not paid.
The evidence is in effect as follows:

From 1914 to 1923 the property involved herein, a large
store building and the lots on which it stands in the town of
Harlem, was owned by the Harlem Mercantile Company, of
which Charles A. Smith, husband of the plaintiff, was presi-
dent and manager.  Up to 1920 the company was prosperous;
it went into the hands of a receiver in 1923; and in 1924 the
plaintiff purchased the store building from the receiver.  The
records of the county carry this property as delinquent for the
year 1914 and as struck off to the county on delinquent tax
sale for that year.  The taxes on this property have been
regularly paid each year since 1914, and at no time up to
1930 was the record delinquency of that year noted on the tax
notices mailed to the owner.

As to the taxes for 1914, Smith testified "absolutely they
were paid."  He had no independent recollection of the pay-
ment, and, when asked why he was so positive, replied, "For
the simple reason why I never let my taxes go delinquent."
He testified that he usually paid his taxes by check, but that
all checks and records for 1914 had long since been destroyed.
The reference to his taxes included the taxes of the company,
and all property assessed to him, except his residence, belonged
to the company.  The cross-examination developed an unex-
plained suggestion that the taxes for 1914 became delinquent
because of some misunderstanding respecting a special improve-
ment tax of Harlem.

The defendants showed by the assessment rolls, register of
taxes paid, delinquency book, tax receipt book, and record of
delinquent tax sale that, of record, the tax was not paid.

The incumbent as treasurer in 1914 testified that, while in
office, he checked his balances each day, and was "long" in his
cash balance at no time in any sum approximating the amount
of this delinquent tax.  This witness admitted that during his
administration certain mistakes had been made in the records

of the office, but not in crediting the payment of taxes to the wrong person or property.

In rebuttal of Smith's positive statements, it was shown that, in addition to the instant tax, the taxes on two pieces of property assessed in Smith's name and belonging to the company were delinquent for the year 1914, and that Smith paid the one in 1916 and the other in 1918.

For a reversal of the judgment plaintiff relies upon the failure of the treasurer, up to 1930, to comply with the requirement of notice of delinquent taxes found in section 2169, Revised Codes of 1921, upon the presumption of payment by the lapse of years, and upon the decision in *Graves* v. *Stone,* 76 Wash. 88, 135 Pac. 810, Ann. Cas. 1915D, 182, said to be based on that presumption.

It is true that section 2169, above, directs the county treasurer to give notice by mail to each taxpayer of the amount of taxes due for the current year, "and the amount due and delinquent for other years," but that direction closes with the provision: "But any failure to give either notice will not affect the legality of the tax."

"The fact that a property owner has paid the taxes on particular property for a series of years may warrant a presumption of payment as to the taxes for one particular year for which he cannot show a receipt, and it may be assumed that the tax of a particular year was paid from the fact that it was not included in the tax bill of succeeding years." (61 C. J. 967.) This presumption is discussed in *Graves* v. *Stone,* supra; it is rebuttable and may be overthrown by any evidence showing it to be more probable than otherwise that the debt, or tax, has not been paid. (*In re Ash's Estate,* 202 Pa. 422, 51 Atl. 1030, 90 Am. St. Rep. 658.)

Aside from the fact that this case presents but a question of fact, and that, as therein stated, each case must be determined on its own facts, the cited case of *Graves* v. *Stone,* is not persuasive here. There the plaintiff in 1913 sought to have the record of delinquent personal property tax for the year 1910 expunged as false and a tax sale enjoined. The plaintiff

testified that he was morally certain the tax was paid, and the record showed that he was financially able to have paid it. On the other hand, the tax record did not show that the tax was paid, and did show that plaintiff's real property tax went delinquent and was later paid. The district court found for the defendants. On appeal, Department 2 of the supreme court of Washington, in a four to one opinion sustained the trial court. (72 Wash. 382, 130 Pac. 369, 371.) The court considered only the facts above suggested, and declared that the probative value of the presumption and assertion of payment were so weakened by the proof of delinquency as to real property that it could not say "as a matter of fact that the tax in question has been paid." On rehearing before the court *en banc*, by a seven to three opinion, the contrary result was reached, but this was because of the fact that the tax was on personal property, and, on consideration of the law of the state requiring the treasurer, within thirty days after notice to the owner, to distrain sufficient of the goods and chattels of the delinquent to satisfy the tax, or to charge the tax against the real property of the owner, "and thus ensure collection," and that the treasurer was personally liable for neglect to collect such a tax, and was required, after exhausting every effort to collect, to certify uncollectible taxes to the county commissioners for cancellation, that, under these provisions, the negative evidence presented by the record which did not show payment could not be accepted.

Here we have rather the contrary situation: The only way to collect taxes on real property is by sale of the property, and, if there is no bidder, the property must be struck off to the county; this was done, and the record shows no neglect in attempting to collect, other than failure to note the delinquency on subsequent tax notices, which is declared not to affect the legality of the tax.

The trial court had the advantage of seeing the witnesses on the stand and thus judging of their credibility, and, on the record, we cannot say that there is not substantial evidence to support the judgment; it cannot, therefore, be disturbed.

(*Kenison* v. *Anderson*, 83 Mont. 430, 272 Pac. 679.)   The first opinion in the *Graves Case*, above, rather than the last, is applicable here.

Judgment affirmed.

MR.   CHIEF   JUSTICE   SANDS   and   ASSOCIATE   JUSTICES STEWART, ANDERSON and MORRIS concur.