East *v.* Woodruff.

4-7877                                             193 S. W. 2d 664

Opinion delivered April 15, 1946.

*D. H. Crawford,* for appellant.

*J. H. Lookadoo* and *Agnes F. Ashby,* for appellee.

MINOR W. MILLWEE, Justice. Plaintiffs, Meleese Woodruff and L. C. Woodruff, her husband, brought this action against the defendant, Virgil East, owner and operator of the East Bus Line, to recover damages for personal injuries to Mrs. Woodruff resulting from a collision caused by the alleged negligence of defendant's bus driver in carelessly operating a large passenger bus in and near the intersection of Clinton and Eighth Streets in the city of Arkadelphia. Defendant prosecutes this appeal from a verdict and judgment for the plaintiffs in the circuit court.

Clinton Street runs east and west in the business section of Arkadelphia, while Eighth Street extends north and south and intersects the former at right angles. According to the testimony of Mrs. Woodruff, she was driving her husband's car east on Clinton Street at a moderate rate of speed on the night of the accident. As she approached the intersection of Eighth Street she saw defendant's driver stop the bus on the east or left-hand side of Eighth Street north of the intersection. In the words of the witness: "Just as I got about the intersection, the bus shot out in front of me and cut the corner." After cutting across the northeast corner of the intersection to his left, the bus driver proceeded in a southeasterly direction to the middle of Clinton Street and then suddenly swerved the bus to his right in a southwestern

direction to enter the lane of a filling station situated on the southeast corner of the intersection.

Mrs. Woodruff testified that she was traveling about 10 miles per hour when the bus suddenly cut in front of her without warning, and that she applied the brakes and swerved her car to the right with the bus in an effort to avoid the collision, but the car struck the bus which dragged the car into a steel post. From the manner in which the bus driver suddenly cut the corner and started down Clinton Street, she thought he intended to continue down the street. She was 10 or 15 feet from the bus when it suddenly turned to the right, and she was so far across Eighth Street that it was impossible to turn either north or south thereon. The testimony of Mrs. Woodruff's sister, who was riding with her at the time of the collision, was substantially the same as that of Mrs. Woodruff. There was testimony that the brakes of the Woodruff car had been repaired on the morning of the accident and were in good condition at the time of the collision.

Plaintiffs introduced a diagram of the streets where the collision occurred upon which Mrs. Woodruff indicated by pencil the course taken by the bus. This sketch clearly shows that the bus entered the intersection from the wrong side of the street and cut sharply across the northeast corner of the intersection into Clinton Street and then directly across the lane of traffic in which Mrs. Woodruff was driving. The bus driver testified that this sketch of the course he traveled was approximately correct. He also testified that when he stopped at the intersection he saw plaintiff's car approaching to his right which was the only vehicle in sight. He had plenty of time to get across the street and ''angled'' across the intersection to the filling station. He was not positive whether he looked around any more for plaintiff's car after he started across the intersection. As he slowed up to enter the platform of the filling station, he heard a passenger say, ''She is going to hit you.'' He applied the brakes and Mrs. Woodruff ran in between the bus and light post, striking the bus very lightly after striking

the post. He did not drive over 8 miles per hour as he crossed the street and began to slow down as he drove on the platform. The bus was either stopped or barely moving when the car hit. He gave no warning signals of his intention to turn left across the intersection or to his right from Clinton Street into the filling station.

It is first insisted that the trial court erred in refusing to give defendant's requested instruction No. 1A which reads as follows: ''The undisputed testimony in this case shows that the bus of the defendant entered the intersection of 8th and Clinton Streets before the car driven by Mrs. Woodruff entered that intersection. That being the case, it was the duty of Mrs. Woodruff to have her car under such control that she could stop it in time to avoid a collision as she proceeded into and across the intersection, and if she did not have her car under such control, she was guilty of negligence and cannot recover, and your verdict must be for the defendant.''

There are several reasons why this instruction should not have been given. It is true, the defendant's witnesses testified that Mrs. Woodruff's car had not reached the intersection when the bus started across the corner. Mrs. Woodruff was carefully examined on this point and, while she admitted that she was not out into Eighth Street when the bus moved forward, the effect of her testimony was that she entered the intersection at approximately the same time the bus started across. Under this state of the testimony, it was the duty of the court to submit the question to the jury which was done in defendant's requested instruction No. 2. The case of *Smith Arkansas Traveler Co.* v. *Simmons et al.*, 181 Ark. 1024, 28 S. W. 2d 1052, involved a collision at an intersection, and the testimony of appellee tended to show that he entered the intersection first, while that of appellant showed that each reached the intersection about the same time, and this court held the conflict in the testimony presented a question for the jury to determine. We think that is the situation in the case at bar in view of the testimony on behalf of plaintiffs that the two vehicles entered the intersection at approximately the same time.

In support of his contention that the court erred in its refusal to give instruction 1-A above, defendant relies on the cases of *Murray* v. *Jackson*, 180 Ark. 1144, 24 S. W. 2d 980, and *Jacks* v. *Culpepper*, 183 Ark. 505, 37 S. W. 2d 94. These cases involved collisions which occurred in the intersection and hold that, where one vehicle has already entered an intersection and the other vehicle has not, the former has the right of way despite a city ordinance which provides that the car on the left shall yield the right-of-way to the one on the right where the two vehicles approach an intersection at approximately the same time. Neither of these cases involved a collision outside an intersection, as is the case here, nor was the question of the illegal entry and crossing of an intersection presented in the cases cited. Paragraph (b) of § 64 of Act 300 of 1937 provides that an approach for a left turn at an intersection shall be made in that portion of the right half of the roadway nearest the center line, and that after entering the intersection, the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered.

It seems to be admitted by the bus driver that he approached the intersection from his left-hand side of Eighth Street and cut across the northeast corner of the intersection into Clinton Street. The rule applicable to the situation thus presented by the undisputed evidence is stated in 42 C. J., p. 977, as follows: "One who approaches an intersection on the wrong side of the highway is not entitled to the benefit of a regulation giving the right of way to vehicles approaching in a certain relative direction. So also, a rule that the motor vehicle first entering a street intersection and making a turn therein has the right of way over another vehicle subsequently entering the intersection applies only in favor of a vehicle entering the intersection from the proper side of the street and making the turn in a proper manner." See, also, Huddy, Cyclopedia of Automobile Law (9th Ed.), Vols. 3-4, p. 267; Berry on Automobiles (7th Ed.), Vol. 3, pp. 82-83.

If it be conceded that defendant's bus driver entered the intersection first, and had the right of way, this did

not license him to unlawfully cut the corner or suddenly swerve the bus to his right after leaving the intersection across a lane of traffic which he, by the exercise of ordinary care, could have known the plaintiff was traveling when the turn was made. In Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 2 (Perm. Ed.), p. 181, it is said: "Although a driver of a motor vehicle has the right of way at an intersection over a driver approaching on an intersecting road, either because of priority of approach or because the traffic regulations give the right of way to vehicles approaching from the right or to travelers on favored streets or going in favored directions, the right so given is not exclusive, but instead is at all times relative and subject to the fundamental common-law doctrine that he should exercise the right so as to avoid injury to himself or others." At page 154 of the same volume the author says: "A motorist cannot ordinarily claim a right of way because of priority of approach secured by violation of law, as by turning to the left before reaching the center of a street intersection or by failing to stop at a stop signal."

The trial court gave defendant's requested instruction No. 2 as follows: "If you find from the testimony that the defendant's bus entered the intersection of 8th and Clinton streets before the car driven by Mrs. Woodruff entered the intersection, you are told that the bus had the right of way and could lawfully continue into and across the intersection. And if you so find, you are further told that the plaintiff, Mrs. Woodruff, was under the duty to have her automobile under such control as she proceeded into and across the intersection that she could stop it or slow it sufficiently in time to avoid striking defendant's bus, and if she failed to do so, and by reason thereof struck the bus, causing the injuries complained of, the plaintiffs cannot recover and your verdict should be for the defendant." In view of the conflict in the testimony as to whether defendant's bus entered the intersection first, and, in view of the undisputed evidence that the bus approached and traversed the intersection in an improper manner, instruction No. 2 was more favorable to defendant than the applicable law and the facts

.warranted, and no error was committed in the refusal to give defendant's requested instruction No. 1-A.

It is also insisted that the trial court erred in giving plaintiff's requested instructions Nos. 1 and 2. Specific objection is made to that part of the two instructions which permitted the jury to find that the two vehicles entered the intersection at approximately the same time. The defendant contends there is no testimony upon which such finding can be based, and that the undisputed evidence is that the bus entered the intersection first. The particular language of the instructions to which objection is made is based on the testimony of Mrs. Woodruff which we have already discussed in connection with defendant's first assignment of error. Since there was evidence on behalf of plaintiffs to the effect that the vehicles entered the intersection at approximately the same time, which conflicted with the testimony of defendant's witnesses on this point, it was proper to submit the issue to the jury under the conflict thus presented.

It is finally contended that Mrs. Woodruff was guilty of contributory negligence as a matter of law. Defendant now says it is undisputed that she drove her car into a position of peril at a speed which prevented her from stopping in time to avoid a collision, and that the court erred in its failure to so instruct the jury. It may first be pointed out that defendant made no request of the trial court to so instruct the jury. On the contrary, several instructions covering the issue of Mrs. Woodruff's contributory negligence were given at defendant's request which correctly left the determination of that question to the jury. Whether the action of the bus driver in cutting the corner of an intersection and suddenly swerving in front of the car of plaintiffs without warning was the sole and proximate cause of the collision was a question for the jury. When the testimony is considered in the light most favorable to appellee, the jury was warranted in finding that the negligence of the bus driver placed Mrs. Woodruff in a precarious position of unexpected and suddenly arising danger. Consequently, she had a right to use such means for avoiding the danger of

a collision as would appeal to a person of ordinary prudence in a like situation.

In the case of *Blakely & Son* v. *Jones,* 186 Ark. 1169, 57 S. W. 2d 1032, it was contended, as here, that appellee was guilty of contributory negligence as a matter of law. Mr. Justice BUTLER there said: "In determining what is or is not negligence in any given case, the test is always what in the light of all the circumstances and in situations similar to that of the person under inquiry, one of ordinary prudence would or would not do, and where men of ordinary intelligence might differ in their honest judgment, the question of negligence is one for the jury." See, also, *Coca-Cola Bottling Co.* v. *Shipp,* 174 Ark. 130, 297 S. W. 856; *Kirby* v. *Swift & Co.,* 199 Ark. 442, 134 S. W. 2d 865; 5 Am. Jur., Automobiles, § 703.

Under the facts and circumstances revealed in this record, Mrs. Woodruff was not guilty of negligence as a matter of law; but rather her acts in the premises were properly presented to the jury, and it was for that body to say whether or not she exercised due care in view of the facts submitted. The jury has, by its verdict, resolved the conflict in the evidence on the question of contributory negligence in favor of plaintiffs under instructions which fairly presented the issue, and that verdict is binding on this court on appeal.

The judgment of the circuit court is, therefore, affirmed.