WHITNEY, RESPONDENT, *v.* BERTOGLIO MERCANTILE CO. ET AL., APPELLANTS.

(No. 4,916.)

(Submitted October 23, 1922. Decided December 18, 1922.)

[211 Pac. 323.]

*Witnesses—Credibility—Improbable and Contradictory Statements—Evidence—Insufficiency.*

Witnesses—"Credible" Witness—Definition.
   1.   While the evidence of one witness is sufficient to establish a fact, the witness must be a "credible" one, *i. e.,* one whose statements are within reason and believable.

[65 Mont. 358.]

Same—Improbable Statements—Duty of Court.

> 2. If the manner in which a witness testifies is such and his statements are so that there is produced in the mind of the court a conviction that they are not and cannot be true, and the right of plaintiff to recover depends upon such testimony, the cause should not be submitted to the jury.

Same—Improbable and Contradictory Testimony Does not Support Judgment.

> 3. In an action to recover an alleged deposit of money which defendant claimed as payment to cover a shortage, plaintiff's evidence *held* so inherently improbable and contradictory as to render it insufficient to support a judgment in her favor.

*Appeals from District Court, Silver Bow County; B. B. Law, Judge.*

ACTION by Mildred Whitney against the Bertoglio Mercantile Company and another. From a judgment for plaintiff and an order refusing them a new trial, defendants appeal. Reversed and remanded, with directions to dismiss.

*Messrs. Walker & Walker* and *Mr. C. S. Wagner*, for Appellants, submitted a brief; *Mr. Frank Walker* argued the cause orally.

While it is true that the appellate courts of this country adhere steadfastly to the doctrine that the verdict of the jury will not be disturbed where there is a substantial conflict in the testimony, yet, from an early day, this court has recognized and adhered steadfastly to exceptions to that doctrine, particularly where it is manifest upon the face of the record that there has been a miscarriage of justice. (See *Landsman* v. *Thompson,* 9 Mont. 82, 22 Pac. 1148; *Nelson* v. *Blackfoot Milling Co.,* 17 Mont. 553, 48 Pac. 81; *Daniels* v. *Granite Bi-Metallic Co.,* 56 Mont. 284, 184 Pac. 836; *Gervais* v. *Rolfe,* 57 Mont. 209, 187 Pac. 899; *State* v. *Nielsen,* 57 Mont. 137, 187 Pac. 639; *McAllister* v. *McDonald,* 40 Mont. 375, 20 Ann. Cas. 429, 106 Pac. 882.)

*Messrs. Canning & Geagan,* for Respondent, submitted a brief; *Mr. M. F. Canning* argued the cause orally.

A judgment will not be reversed for alleged insufficiency of the evidence where the record shows a substantial conflict therein;

the only exception to the rule being, that where there is no evidence creating a conflict, or where the evidence tending to create a conflict is so utterly unsubstantial, trivial and shadowy that it amounts to no evidence, then of course it will be the duty of the trial court, under such circumstances, to grant the aggrieved party a new trial. This rule has been unswervingly adhered to in this state even in the cases cited by appellants. (*Rood* v. *Murray,* 50 Mont. 240, 146 Pac. 541; *Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76; *Gervais* v. *Rolfe,* 57 Mont. 209, 187 Pac. 899; *Daniels* v. *Granite Bi-Metallic Co.,* 56 Mont. 284, 184 Pac. 836.)

And this court has even gone so far as to say that a verdict based upon conflicting evidence and subsequently sustained by the trial court in denying a motion for a new trial is conclusive on appeal. "A verdict on conflicting evidence approved by the trial court in denying a new trial is conclusive on appeal." (*Robinson* v. *Cole,* 46 Mont. 140, 126 Pac. 850; *Lizott* v. *Big Blackfoot Milling Co.,* 48 Mont. 171, 136 Pac. 44; *Western Mining Supply Co.* v. *Melzner,* 48 Mont. 174, 136 Pac. 44; *Smith* v. *Barnes,* 51 Mont. 202, Ann. Cas. 1917D, 330, 149 Pac. 963; *Stone* v. *Maynard,* 52 Mont. 147, 156 Pac. 418.) And as applicable to inconsistency in the evidence, the rule is laid down as follows: "Where the evidence directly conflicts, and its credibility is in doubt because of inconsistent statements of witnesses, it is not within the province of the court on appeal to say as a matter of law that the jury and the trial judge who reviews their findings on motion for a new trial reached a conclusion wholly without foundation in the evidence." (*Fowlie* v. *Cruse,* 52 Mont. 222, Ann. Cas. 1917E, 619, L. R. A. 1916E, 472, 157 Pac. 958; *Stone* v. *Maynard, supra.*)

MR. JUSTICE COOPER delivered the opinion of the court.

The allegation upon which the plaintiff grounded her case was that on August 30, 1919, she deposited with the defendants the sum of $800, upon their promise to return it within three days thereafter. The answer alleges that the sister of

[65 Mont. 358.]
the plaintiff, Leona Whitney, had theretofore received more than $800 for the use and benefit of the defendants, all of which was then due and owing by Leona Whitney, and that the plaintiff for her sister paid to the defendants the $800 in liquidation and satisfaction of the moneys so received by her. The jury returned a verdict for plaintiff in the amount prayed for. From the judgment and order denying a new trial, defendants appeal.

From the record it appears that on the evening of August 29, 1919, at a little before 6 o'clock, in the store of the defendant company, D. G. Bertoglio, its manager, charged Leona Whitney, a sister of the plaintiff, with the misappropriation of sums of money belonging to the company, amounting to something like $1,800. For six years prior to August 29, 1919, she had kept the books of the Bertoglio Mercantile Company and had in her charge its books, cash, bank account. receipts and papers. At the time the charge was made, Miss Whitney promised Mr. Bertoglio that she would be at the office of Mr. Thomas J. Walker, in the State Saving Bank building in Butte, at 7:30 that evening. They met there pursuant to agreement. What transpired there appears in the testimony hereinafter referred to.

At the trial, the plaintiff testified substantially that she had been a school-teacher in the public schools of the city of Butte for a number of years prior thereto; that she went to the office of Mr. Walker on the evening of August 29 because her mother did not want her sister Leona Whitney to go alone. Arriving there at about 8:15 o'clock she found in the office Mr. C. S. Wagner, one of the attorneys in this case, and Mr. Bertoglio. Before the arrival of Mr. Walker a conversation occurred near the door of his office between Mr. Bertoglio and herself, in which Mr. Bertoglio "said some things to her which were not very nice." What they were she did not tell; but she stated that "the only thing he seemed to say was that he was going to give us a lot of publicity, and would tell things we didn't want people to find out"; that Mr. Jackson, the county attorney, knew all about it and was to come and

arrest Leona right away; that during the discussion he became enraged and threatened to strike her. At this stage of the trouble Mr. Thomas J. Walker appeared, and, with Leona Whitney and Mr. Bertoglio, retired into his private office, where the three remained for a space of time not disclosed by the evidence. What occurred in the room the plaintiff did not know, either, as she stated, because Mr. Walker and Mr. Bertoglio would not permit her to be present, or because, as they both testified, Leona Whitney had told them that she did not want either the plaintiff or her mother to know of her alleged peculations. The plaintiff further testified that Mr. Walker told her that if she did not bring up the money they would have Leona arrested; that she had never been arrested, and she and her mother could not have such a thing happen. On cross-examination she testified that on the morning following the meeting, in compliance with the suggestion of Mr. Walker, she took $800 up to his office, handed it to him, and took the following receipt from him:

"Received of Leona Whitney eight hundred ($800.00) being part payment of an alleged shortage in her a/c with the Bertoglio Merc. Co.

"T. J. WALKER,

"Atty. for Bertoglio Merc. Co."

That Mr. Walker, the night previous, had told her that the deposit of the money was to be "a sort of a bond for three days," and then it was to be returned to her; that she did not know "what was supposed to be done" or anything about it; that it was not true that her sister had admitted being short in her accounts with the defendant company; and that she had not heard Leona make an admission to that effect. Testifying concerning the manner in which she acquired the $800, she stated that she had that amount on deposit in the Yegen Bank at Butte on the first of August, 1919, and that she drew it out and gave it to Mr. Walker because he told her he was "going to look out for us," and that if we put the money up there as a bond for three days, it would be returned at the end of that time; that she felt that her sister was not short

in her accounts, in fact she knew she was not. When the noon hour arrived and a recess was taken, the redirect examination of the plaintiff was under way. At 2 o'clock P. M. it was resumed. The portion of her testimony showing the character of the proof relied upon to sustain the judgment is as follows:

"Q. Miss Whitney, Mr. Walker asked you on cross-examination about getting this $800 that you paid to him, or paid to Tom Walker, on the 30th of August last, and you stated something about a deposit in Yegen's Bank? A. Yes, sir.

"Q. When was that or any part of it deposited in the Yegen Bank? A. Well, I was in doubt of that myself, and I went down to the Yegen Bank and found out just exactly when I withdrew that money. I made the deposit in Yegen's Bank when I first began teaching and I added to it little by little. It was in 1917 I drew it out; I had $510 at that time. We were going to buy a house, been talking a home, and then we had looked at another place, and I had kept adding to that $510, and I probably had, well, enough to make the $800; I added to it since 1917. That was the same $800; that is what I had, was that $800 that I spoke of this morning."

Recross-examination: "I have not changed my story; I went to the Yegen Bank myself at noon and had them look up on their record.

"Q. Well, why is it you told the jury before noon that you had taken this money out of the bank in August, 1919? A. I didn't understand it.

"Q. You were asked the question at least three or four times, weren't you? A. I didn't understand the question. I am a school-teacher. I think I am able to understand the English language very well.

"Q. How do you account for this discrepancy that you told us on cross-examination that you withdrew $800 on the 1st of August, 1919, and now when Mr. Dakin is in court you say that it was two years prior to that; how do you account for that? A. I thought it was my own affair. I had that $800 and you have it now; I don't see what difference it makes. ✻ ✻ ✻

"Q. Yes. Now, I asked you three or four times, Miss Whitney, on cross-examination this morning, if you drew that out in one lump sum of $800, and you told me three or four times that you drew it out of Yegen Bros.' Bank in one lump sum, didn't you? A. I drew out $510 at one time, and I added to it.

"The Court: That is not the question. The question is did you not tell Mr. Walker this morning in answer to his question that you drew out $800 in one sum from Yegen's Bank? You can answer that yes or no. A. Yes.

"Q. How do you account for that? A. Well, I expect I told you that, and I told you the other; I didn't understand it very well.

"Q. It wasn't the fact, was it, you didn't draw out $800, the 1st of August, 1919? A. I had $800 the 1st of August, 1919, but I didn't draw it out of Yegen's Bank.

"Q. What did you say? A. I said I had $800 the 1st of August, and I didn't draw it out of Yegen's Bank at that time. I last had an account in Yegen Bros.' Bank in February of 1917."

For the defendants, Mr. Walker denied positively that he ever made a statement by which the plaintiff could have understood that the money she deposited with him was held as a bond, or otherwise than as a payment on account of the alleged shortage, stating that he gave the receipt to her in accordance with the understanding of the parties present.

D. G. Bertoglio denied that he assumed a menacing attitude toward the plaintiff, or threatened to strike her, or was rude or boisterous in his conduct. He also testified, and was corroborated by two other witnesses, that he discussed the alleged shortage with Leona Whitney, told her of the condition of her accounts, and that she admitted the shortage in the presence of the persons mentioned.

It is true that the evidence of one witness is sufficient to [1-3] establish a fact. The term, however, does not imply merely that a witness has intelligence or knowledge enough to testify to the facts in the case. A "credible witness" is one

whose statements are within reason and believable.   And if the manner in which a witness testifies is such, and the statements upon the stand vary so, that there is produced in the mind of the court a conviction that his or her testimony is not and cannot be true, the court should not avoid its duty by turning the case over to the jury for decision.   A witness may as well be contradicted by what he or she states, as by the testimony of other persons; and where there are inherent improbabilities in the evidence upon which the case must rest, so patent that the truth cannot be in it, it is a question of law and not one of fact.   This court has so held in two very recent cases. (*Daniels* v. *Granite Bi-Metallic Co.,* 56 Mont. 284, 184 Pac. 836; *Casey* v. *Northern Pacific Ry. Co.,* 60 Mont. 56, 198 Pac. 141.)

The plaintiff and her sister were both deeply interested in sustaining the good name of the family; yet Leona Whitney, persistent as she was in denying that she had confessed her misappropriations, never did deny the actual taking.   The evidence of the plaintiff was so steeped in contradictions and improbabilities that it does not support the judgment.

The judgment and order are reversed and the cause is remanded, with directions to dismiss the complaint.

*Reversed.*

ASSOCIATE JUSTICES FARR, HOLLOWAY and GALEN concur.

MR. CHIEF JUSTICE CALLAWAY did not hear the argument and takes no part in the foregoing decision.