MOORE, Respondent, *v.* JACOBSEN et al., Appellants.

No. 9227.

Submitted January 3, 1953. Decided June 26, 1953.
Rehearing Denied December 15, 1953.
263 Pac. (2d) 713.

Mr. Chief Justice Adair and Mr. Justice Bottomly dissented.

Brattin & Habedank, Sidney, for appellant.

Sanders, Cresap & Koch, Sidney, for respondent.

Mr. Otto T. Habedank and Mr. C. T. Sanders argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff was injured by being struck by an automobile driven by defendant, Soren Jacobsen, son of defendant Ingolf Jacobsen. He brought this action to recover damages sustained by him. The jury returned a verdict in his favor against both defendants in the sum of $1,853.90. Defendant's motion for a new trial was denied and they have appealed from the judgment entered on the verdict.

The accident occurred at about 9:30 p. m. on November 18, 1950, on the highway about 3½ miles in a westerly direction from Fairview, Montana. The events preceding and leading up

to the accident were these: Plaintiff and one Stanley Peterson left the Jake Latka farm after work and traveled by automobile to Fairview where they had at least six drinks of whiskey and then started in the same automobile, a Studebaker, to another farm home west of Fairview. Harvey Nelson joined them at Fairview for the latter journey. The car was driven by Stanley Petersen; at about 3½ miles west of Fairview, and as they had passed over the brow of a hill the motor failed; the car was permitted to coast down the hill about 750 feet and then brought to a stop on the oiled portion of the highway and in the right-hand lane of traffic; the highway at that point was 25 feet wide with no painted center line; while the car was thus parked plaintiff and Harvey Nelson got out of the car; plaintiff was attempting to attach a trouble light to the battery located under the hood of the car, standing to the left of the car with his head under the hood in so doing; at the direction of plaintiff the lights on the car were turned off while he was attempting to attach the light to the battery; a few seconds after the lights were turned off defendant Soren Jacobsen, driving his father's car and in company with his brother Inge and his cousin Elroy Kettleson, approached from the east; the lights on his car would not drop down upon the parked car as it came down the hill until within about 150 feet from it; he saw plaintiff's car on the highway when about 50 feet from it and saw plaintiff leaning against the front fender; he drove the car to the left lane of traffic thinking that he left a clearance of about 4 feet between the right-hand side of the car he was driving and the body of plaintiff; there was evidence that defendant Soren Jacobsen had stated that he was traveling about 45 miles per hour; patrolman John Corder testified that defendant Soren Jacobsen estimated his speed at 40 miles per hour; Soren testified that he was traveling about 35 miles per hour; as he passed the plaintiff's car, his car struck plaintiff on his right hip causing the injuries complained of; apparently the door handle of defendant's car struck plaintiff because shortly after the accident it was discovered that the handle of the door was missing; defendant Soren

Jacobsen realizing that he had hit someone drove some distance past the plaintiff's car and then turned around and drove back and found plaintiff lying on the road quite badly injured; the road was icy and slippery and defendant Soren Jacobsen did not apply the brakes on the car he was driving as he passed the plaintiff's car; tracks made by defendant's car indicate that it was 18 inches or 2 feet left of the center of the road; defendant Soren Jacobsen did not sound his horn and plaintiff and those traveling with him did not observe the approach of defendant's car although the lights were on and visible for a distance of 500 feet or more; neither did they hear the car approaching although it was noisy because the muffler was disconnected; no one saw plaintiff move as the defendant's car passed his car; plaintiff testified that he did not move as the defendant's car passed until he was struck, that if he did step back from the car he did not step across the "white mark."

Defendants raise two principal questions by the appeal. The first contention is that there is no evidence of negligence on the part of defendants. Their contention is that in passing the Moore car they passed on the left-hand lane as they had a right to do. The evidence, however, shows that defendant Soren Jacobsen, as well as Elroy Kettleson, admit seeing plaintiff standing by his car with his head under the hood of his car as they passed; no warning was given of the approach of defendants' car, nor was there any attempt to slacken the speed of the car as it passed the Moore car. There was evidence as above noted warranting a finding that it was then traveling at about 40 or 45 miles per hour. These acts of negligence, along with others, were charged in the complaint as being the proximate cause of plaintiff's injuries. The proof was sufficient to make out a prima facie case of negligence sufficient to carry the case to the jury.

"Whether or not sufficient care has been exercised in passing a parked or stationary vehicle is ordinarily a question of fact for the jury." Blashfield, Cyc. of Automobile Law & Practice, Vol. 2A, sec. 1221, p. 95.

In the light of the evidence above alluded to concerning the speed and lack of warning this rule has application here and the court did not err in denying defendants' motion for non-suit and in denying defendants' motion for new trial for insufficiency of the evidence to justify the verdict.

Defendants next contend that the evidence shows negligence on the part of plaintiff barring recovery. In reliance upon the well-established rule that violation of a statute constitutes negligence *per se* they contend that plaintiff was guilty of negligence in the following particulars: That plaintiff was intoxicated and not using the care that a sober person would have exercised; that no warning was given to approaching vehicles of the fact that the stalled car was parked on the highway; that plaintiff made no effort to protect himself by stepping to a place of safety and plaintiff was not exercising proper care for his own safety.

Reliance is placed upon R. C. M. 1947, sec. 31-108, as amended by Chapter 118, Laws of 1949, which in part provides: "For the purpose of this act, the following acts committed relative to the use of the highways and the operation of motor vehicles in the state of Montana shall constitute a crime punishable by law as hereinafter provided: * * *

"4. Driving a vehicle, of any type, at night without suitable lights or reflectors * * *.

"17. Stopping, turning or parking on or along the main traveled highway where such vehicle can not be seen by the driver of any other vehicle approaching from either direction within five hundred (500) feet * * *.

"34. Walking * * * on a highway while under the influence of intoxicating liquors. * * *

"40. Driving or operating an automobile * * * upon or over any highway or street or public thoroughfare within the state of Montana * * * while under the influence of intoxicating liquor or any drug or narcotic."

This statute was passed after the decision in Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 Pac. (2d) 1025,

holding that stopping a car on a highway does not constitute negligence.

It may be conceded that there is sufficient evidence to warrant ▮ a finding of negligence on the part of plaintiff for violation of R. C. M. 1947, sec. 31-108, as amended. On the assumption that plaintiff was guilty of negligence it was still a question for the jury to determine whether his negligence or that of defendant Soren Jacobsen was the proximate cause of the injuries.

Defendants contend that plaintiff could have parked the car ▮ on a side road near where it was actually parked and that it could have been driven and parked on the side road with perfect safety. The rule is that the operator of a motor vehicle has the right to stop it on the highway for the purpose of making repairs. 60 C. J. S., Motor Vehicles, sec. 331, p. 774. This right is contemplated by paragraphs 15 and 17 of section 31-108, as amended by Chapter 118, Laws of 1949.

Stopping on the highway, as well as the absence of lights on his car, are immaterial even though they constitute negligence, unless such negligence proximately contributed in a material degree to the injuries. See Albrecht v. Waterloo Const. Co., 218 Iowa 1205, 257 N. W. 183; Blakely & Son v. Jones, 186 Ark. 1169, 57 S. W. (2d) 1032; Cooper v. Agee, 222 Ala. 334, 132 So. 173; Miles v. Webb, 162 Md. 269, 159 A. 782; Gammon v. Wales, 115 Cal. App. 133, 300 Pac. 988; Becker, for Use And Benefit of Becker v. Mattel, La. App., 165 So. 474.

And what constitutes the proximate cause of an injury is ▮ ordinarily one of fact for the jury where, as here, there is room for a difference of opinion among reasonable men. Marsh v. Ayers, 80 Mont. 401, 260 Pac. 702; Burns v. Eminger, 84 Mont. 397, 276 Pac. 437; McNair v. Berger, 92 Mont. 441, 15 Pac. (2d) 834; Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 Pac. (2d) 1025.

The jury was warranted in finding that the absence of lights on the car did not contribute to plaintiff's injuries since defendant Soren Jacobsen actually saw the car on the highway and saw plaintiff standing beside the car and would not have driven

his car any differently had the lights been on. The fact that plaintiff did not park on the side road was a circumstance to be considered by the jury, but it does not follow as a matter of law that the failure to do so bars recovery, particularly where, as here, the car was not allowed to remain on the highway an unreasonable length of time, compare Davis v. North Coast Transportation Co., 160 Wash. 576, 295 Pac. 921, and where plaintiff had no reason to suppose that it would take any extended amount of time to repair the car. The court properly submitted the question of defendant's negligence and the effect of plaintiff's negligence to the jury.

Defendants contend that the court erred in so instructing the jury as to permit recovery against defendant, Ingolf Jacobsen in a sum exceeding $500. The record shows that the application of Soren Jacobsen for a driver's license was signed by his father, defendant Ingolf Jacobsen. Soren Jacobsen was 18 years of age at the time of the trial in December 1951 and hence was only 17 years of age when the accident occurred.

R. C. M. 1947, sec. 31-131, which was enacted as part of Chapter 267, Laws of 1947, provides: "(a) The application of any person under the age of eighteen (18) years for an instruction permit or operator's license shall be signed and verified before a person authorized to administer oaths by both the father and mother of the applicant, if both are living and have custody of him, or in the event neither parent is living then by the person or guardian having such custody or by an employer of such minor, or in the event there is no guardian or employer then by other responsible person who is willing to assume the obligation imposed under this act upon a person signing the application of a minor.

"(b) Any negligence or wilful misconduct of a minor under the age of eighteen (18) years when driving a motor vehicle upon a highway shall be imputed to a person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or wilful misconduct

(except as otherwise provided in sub-paragraph (c) of this section).

"(c) In the event a minor deposits or there is deposited upon his behalf proof of financial responsibility in respect to the operation of a motor vehicle owned by him, or if not the owner of a motor vehicle, then with respect to the operation of any motor vehicle, in form and in amounts as required under the motor-vehicle financial responsibility laws of this state, then the board may accept the application of such minor when signed by one parent or the guardian of such minor, and while such proof is maintained such parent or guardian shall not be subject to the liability imposed under subparagraph (b) of this section."

It is contended by defendants that subdivision (c) of this section makes R. C. M. 1947, sec. 53-402, applicable to this case and that in consequence the limit of the liability of the father is $500 for injury to one person. Section 53-402 has since been repealed except as to prior accidents and the amount of liability for bodily injuries has been raised to $5,000. Ch. 204, Laws of 1951.

There is no evidence that would indicate that subdivision (c) of section 31-131 was resorted to in the case before us. The record does not disclose that there was deposited any proof of financial responsibility in respect to the operation of the motor vehicle in the amount of $500 or any other amount at the time the application was made for a license, or at any other time. To obtain the benefits of subdivision (c) of section 31-131 as affected by section 53-402, such proof must be made at the time the application for license is made.

Subdivision (c) of section 31-131, not having been resorted to, the case is governed by subdivision (b) thereof. Under subdivision (b) of section 31-131 the defendant Ingolf Jacobsen who signed the application of the minor is liable for any damages caused by the minor's negligence.

The court was right in so instructing the jury as to make defendant Ingolf Jacobsen liable with defendant Soren Jacobsen for all the damages occasioned by the latter's negli-

gence. Compare Easterly v. Cook, 140 Cal. App. 115, 35 Pac. (2d) 164; Sleeper v. Woodmansee, 11 Cal. App. (2d) 595, 54 Pac. (2d) 519, and Rogers v. Wagstaff, Utah, 232 Pac. (2d) 766, 26 A. L. R. (2d) 1316.

Defendants complain of the giving of certain instructions over their objection and in refusing to give certain instructions offered by them.

One instruction told the jury that in case of a breakdown, the ■ driver of a car, if he exercises reasonable care, may use the highway for the purpose of inspection or repair in case his car is unable to proceed, From what has already been said, it was proper to give this instruction.

Likewise it was not error to give the following instruction: ■ "You are instructed that 'Reasonable Care' does not require persons having legitimate business on the highway to anticipate that the driver of an on-coming car will not see what is plainly before him or will drive his car so that he cannot stop when he sees an obstruction or person in the line of his travel when ordinarily he would have plenty of time and space within which to avoid injury."

As to defendants' offered instructions which the court refused to give, it is sufficient to say that they were properly refused as either being erroneous, covered by other instructions, or inapplicable. The jury were adequately and correctly instructed on all essential questions involved in the case.

The judgment is affirmed.

MR. JUSTICES FREEBOURN and ANDERSON, concur.

MR. CHIEF JUSTICE ADAIR: (dissenting).

A number of important facts apparently overlooked in the majority opinion appear to me to call for a reversal of the judgment and to entitle the defendants to both a rehearing and a new trial in this case.

The testimony of the plaintiff and the witnesses produced by him clearly discloses that plaintiff was guilty of negligence con-

stituting a proximate and contributing cause of his injury which, under the law, bars recovery.

*Plaintiff's Evidence.* In part, the testimony of plaintiff and his witnesses was to the following effect.

The plaintiff Tom Moore and one Stanley Petersen worked together as farm laborers on the Jake Latka farm, 57 miles north of the town of Fairview, Montana.

Came Saturday evening, November 18, 1950, and Moore and Petersen, at about 6:00 o'clock p. m. took off for town in the plaintiff Moore's Studebaker automobile.

Arriving at Fairview the two men entered Pettibone's Bar where they tarried awhile and slaked their thirst, each man there drinking at least a half dozen, if not more, regular one ounce "shots" or glasses of whiskey.

Stanley Petersen, a witness for plaintiff, on cross-examination, testified concerning the stop at the bar, as follows:

"Q. You went to the bar? A. Yes.

"Q. What bar? A. Pettibone's.

"Q. Did you have some drinks there? A. That is right.

"Q. Do you recall how many? A. Around six.

"Q. You are not sure whether it was five or six? A. It was six or seven.

"Q. Not less than six? A. No.

"Q. Possibly you would have had more? A. I would not say that.

"Q. Were they drinks of whiskey? A. That is right.

"Q. One ounce drinks? A. That is right.

"Q. Did they have a tendency to cause you to become intoxicated? A. No.

"Q. Didn't render you intoxicated at all? A. I would not say that, no."

Sometime between 8:00 and 9:00 o'clock that night, Moore and Petersen and one Harvey Nelson left the bar, climbed into the plaintiff Moore's Studebaker and started for the Sam Val-enez place proceeding westerly from Fairview on what is known

as the "Township Road" traveling at the estimated speed of about 35 miles per hour.

The "Township Road" is curved and winding. At a point about three and one-half miles west of Fairview it passes over the brow of a hill and thence down grade for a few hundred feet where it turns slightly to the left from whence it runs westerly on a long gradually descending slope.

Sometime after 9:00 o'clock that night plaintiff's Studebaker coming from Fairview passed over the brow of the above hill and then proceeded down the westerly descending slope of such hill until it came to a stop in the northerly or right-hand driving lane or traveled portion of the road at which place the entire road measured but twenty-five feet in width.

On his direct examination the plaintiff Moore testified:

"Q. How long did you stop in Fairview? A. About an hour.

"Q. What did you do in Fairview? A. I had six drinks of whiskey. * * *

"Q. What did you do after that? A. Started out to the farm.

"Q. Did you leave the bar and start from there? A. Yes.

"Q. Who was driving at the time? A. Stanley Petersen.

"Q. What if anything happened after that? A. Well we were going down the road and the car stopped.

"Q. Your car stopped? A. Yes.

"Q. Do you know the reason for it stopping? A. No, I don't.

"Q. It just stopped? A. The motor just died."

Plaintiff testified that when his automobile came to a stop he obtained a trouble light from the back seat, stepped out of the right door, walked around to the left front of the car, raised the hood, placed his head beneath preparatory to attaching his trouble light to the posts or cables of his car battery whereupon at plaintiff's direction, Stanley Petersen turned off the light switch in the car thereby extinguishing all the lights on the car.

The plaintiff testified that the lights on his Studebaker were on until he started to hook his trouble light on the posts of the car's battery. He further testified:

"Q. Until you started to hook the battery cables onto the posts the lights were on? A. Yes.

"Q. At that time they were turned off? A. Yes.

"Q. From that time until the accident your lights were off, is that right? From the time you started to hook the cables to the posts until the accident happened your lights were off? A. I took the trouble light and raised the hood and when I got ready to hook the cables onto the posts I told him to turn the lights off. I just saw a flash. * * *

"Q. You say possibly your lights were out thirty seconds and you were hit? A. It could have been.

"Q. Did you hear anything approaching at all? A. Not a thing.

"Q. Did you instruct the other two parties in the car to watch for approaching vehicles? A. I did not.

"Q. If you had known a vehicle was coming down the highway Mr. Moore would you have continued to remain in the position on the highway you were in? A. I would not.

"Q. You would have gotten off the highway? A. Yes.

"Q. The only reason you were in that position you did not have any knowledge a car was coming? A. I never seen it coming.

"Q. In other words, had you known this car was coming you would have considered a person foolish to stay on the highway with that knowledge, would you not? A. Yes. * * *

"Q. As I understand you—I want to get this clear—you didn't ask Petersen or Nelson to keep a watch for cars approaching from the rear? A. No.

"Q. You stood with your head under the hood where you could not see to the rear? A. That is right.

"Q. Knowing that you were going to be standing with your head under this hood, why didn't you request one or the other of the two men to keep a look out for approaching cars? A. I never thought of it.

"Q. Were both Mr. Nelson and Mr. Petersen in the car up

to the time of the accident? A. No, Nelson was standing in front of the car.

"Q. He didn't warn you of any car approaching from the rear? A. He did not.

"Q. You say the only thing you recall is a flash? A. That is right. * * *

"Q. Was the road icy that particular night at that point? A. It was. * * *

"Q. Was there spots of ice here and there on the road? A. There was. * * *

"Q. Do you think you were in an intoxicated condition at the time of the accident from six drinks of whiskey? A. No.

"Q. You do quite a bit of drinking? A. I do.

"Q. You know what results six drinks would have? A. Yes.

"Q. Were these regular one ounce drinks? A. Yes.

"Q. The bartender wasn't fudging on you? A. Not a bit. * * *

"Q. There is no question about this, that when you got ready to hook those clasps on the battery posts you instructed Mr. Petersen yourself to turn the lights out? A. That is what I did."

No effort was made to remove the car from the traveled portion of the road. Stanley Petersen, a witness for the plaintiff, testified:

"Q. What was the first reaction when the car stalled? A. Tom got out to fix it.

"Q. Did you try to get the car off the road? A. No, I didn't. * * *

"Q. Tell us in your own words what you saw Tom do after the car stalled. A. Tom got out with the trouble light in his hand.

"Q. Then what did he do? A. He walked around, and raised up the hood.

"Q. Tell us what he did after that from what you saw. A. Well he got around to the left hand side and then told me to turn the lights out.

"Q. Did you turn them out? A. Yes."

354

When asked as to whether Petersen was driving the car under the plaintiff's supervision the plaintiff testified:

"Q. He was driving under your supervision and control? A. Yes.

"Q. If you told him to do something he would do it? A. No., I would not say that.

"Q. As far as driving was concerned? A. Yes.

"Q. If you asked him to stop the car he would stop it? A. Yes.

"Q. If you wanted him to park the car at a certain place he would park it that way? A. Yes, sir.

"Q. That control, as far as Stanley Petersen is concerned, you would say existed up to and including the time the car was parked on the highway prior to the accident. A. Yes.

"Q. In other words, what I am getting at, if wherever the car was parked on the highway, or stopped, if you had not been satisfied with that position Stanley Petersen would have attempted to change it for you? A. That is right."

While plaintiff's Studebaker was thus allowed to be and remain in the right or northerly traveled portion of the road in the darkness of the night with no light, lantern, flare, torch or other device to warn other motorists of its presence in the road, a Nash automobile driven by the defendant Soren Jacobsen, aged 17 years, proceeding westerly with its lights in good condition came over the brow of the hill and then started down the westerly slope as had plaintiff's Studebaker some time before. Riding in the Nash with the defendant Soren Jacobsen were his younger brother Inge Jacobsen, aged 14 years, and his cousin Elroy Kettleson, aged 16 years. The boys had attended the first show at a motion picture theater in Fairview and were then returning to the Jacobsen home.

*Defendants' Evidence.* At the trial the boys testified that as the Nash came down the slope it was traveling at a speed of about 35 to 40 miles per hour and that in the darkness and because of the character of the terrain and road they were unable to observe plaintiff's Studebaker so parked in the road wholly

without lights or warning signals of any sort, until the Nash was about fifty feet from the Studebaker at which point Soren Jacobsen, the driver, instantly pulled the Nash over to the extreme left being the southerly side of the road and that by so acting he avoided any collision or contact with the Studebaker.

The evidence is that in passing the parked Studebaker the left wheels of the Nash left tracks in the snow within one foot of the extreme left-hand or southerly edge of the road thus allowing plaintiff all the road possible and thereby avoiding a collision between the cars that probably would have wrecked both.

*The Accident.* It was not until he was in the act of passing the Studebaker that the defendant Soren Jacobsen caught sight of the plaintiff Moore standing in the darkness at the left front of his car with his head tucked underneath the Studebaker's hood and his rear protruding sufficiently to be caught by the right door handle of the passing Nash. As their Nash came opposite the front of the Studebaker in passing the boys, riding in the Nash, heard a click by the right door handle of their car whereupon Soren Jacobsen brought the Nash to a stop about one hundred fifty feet westerly from the spot where the Studebaker was parked.

As soon as he observed the presence of the plaintiff Tom Moore in the road, Soren Jacobsen attempted to swing his Nash far enough to the left to clear both the plaintiff and plaintiff's car. Jacobsen testified:

"Q. Did you attempt to swing your car far enough over to the left to clear Mr. Moore's car as well as Mr. Moore? A. Yes.

"Q. About how many feet do you believe there was between your car and the Moore car as you went on by? A. About four feet.

"Q. Do you know how close you came to the left hand edge of the road as you went by? A. There was snow on the edge, I suppose a foot or two.

"Q. What was that? A. About a foot I imagine.

"Q. You think there was about a foot on the left hand edge of that road? A. Yes."

John Corder, a Montana state highway patrolman with more than ten years' experience in that office, was called by plaintiff as a witness. On his direct examination he testified in part: That he was on duty on the night of November 18, 1950, and was called to the scene of the accident and investigated the same; that the road was then slippery and icy; that he examined the tracks made by the Nash car; that as that car came over the hill the lights dropped down enough so they hit the parked car on the right side of the road; that probably about the time the lights hit the parked car the occupants of the Nash saw it and then the tracks of the Nash swung to the left; that tracks did not show that the driver of the Nash had applied his brakes and that "he got down the hill all right and if he had applied his brakes, I don't believe he would have brought the car to a stop."

Respecting his interview with Soren Jacobsen immediately following the accident, Patrolman Corder testified: "He told me he never saw the vehicle until his car came over the hill and when his headlights came down he noticed a car sitting in the road in front of them, *without lights* he said at that time."

After the Nash had passed the Studebaker, Stanley Petersen turned the light switch in plaintiff's car thereby again turning on both the taillights and the headlights.

Soren Jacobsen turned his Nash around and returned to the Studebaker where he discovered that plaintiff had been caught by the right door handle of the Nash and severely injured. Thereupon the three boys assisted in placing the plaintiff in their Nash and then before leaving the scene of the accident they cleared the highway of a dangerous hazard and obstruction by pushing the Studebaker off the road.

This done the defendant Soren Jacobsen and his two youthful companions took the plaintiff Tom Moore and Stanley Petersen to Dr. Merriam's office in Fairview where plaintiff received emergency medical treatment following which he was taken by ambulance to Sidney, Montana. Thereupon Soren Jacobsen, accompanied by Inge Jacobsen and Elroy Kettleson, took Stanley Petersen in their Nash and drove him from Fairview to the Sam

Valenez place for which Petersen said he was headed when the accident happened.

The witness Corder testified that in proceeding over the brow of the hill in coming from Fairview "a car driven after dark with the headlights on, the lights would come down gradually as the front of the car came down the hill."

Again: "By the time his [defendant's] lights dropped down far enough to hit the parked car he would probably be within one hundred fifty feet of the parked car before the lights would drop enough to hit it * * * A driver that was driving careful and prudent would not have slammed on his brakes, no. * * * That was my opinion at that time that he [defendant] used good judgment in keeping his feet off the brakes and pulling to the left and passing as he did."

Patrolman Corder also testified that he talked with the plaintiff Moore and his companion Stanley Petersen immediately following the accident and that both plaintiff and Petersen appeared "to be in an intoxicated condition."

Dr. Merriam, also a witness for plaintiff, and who administered medical aid to the plaintiff shortly after the accident testified: "Q. What was his [plaintiff's] condition in reference to his drinking? A. He was quite well intoxicated I would say. Q. At the time you examined him? A. Yes." Dr. Merriam also testified that another man who came into his office at the same time plaintiff was brought in was also intoxicated. The record shows Stanley Petersen was the intoxicated person to whom the doctor referred.

The undisputed evidence shows that plaintiff violated the provisions of subdivisions 4, 17 and 40, of section 1 of Chapter 118, Laws of 1949, which violations were a proximate cause of the accident.

Since plaintiff's evidence clearly disclosed that he was guilty of negligence constituting a proximate or contributing cause of his injury, the law bars recovery. Meehan v. Great Northern R. Co., 43 Mont. 72, 80, 114 Pac. 781; Harrington v. Butte, etc., Ry., 37 Mont. 169, 95 Pac. 8, 16 L. R. A., N. S., 395.

It cannot be unfair to this plaintiff to deal with his case from the standpoint of his own statements. Wilson v. Blair, 65 Mont. 155, 170, 211 Pac. 289, 27 A. L. R. 1235; Casey v. Northern Pac. R. Co., 60 Mont. 56, 198 Pac. 141. Compare Molt v. Northern Pac. R. Co., 44 Mont. 471, 120 Pac. 809.

In Puckett v. Sherman & Reed, 62 Mont. 395, 205 Pac. 250, 251, in reversing a verdict for plaintiff this court said: "The violation of the speed ordinance by Leland constituted negligence for which the defendant, his employer, might be charged, but equally so the violation of the same ordinance by plaintiff constituted negligence, and, if it may be said that Leland's violation was a proximate cause of the collision, so likewise might it be said that plaintiff's violation was a contributing proximate cause. Melville v. Butte-Balaklava Copper Co., 47 Mont. 1, 130 Pac. 441." See also Knott v. Pepper, 74 Mont. 236, 240, 239 Pac. 1037; Doorly v. Goodman, 71 Mont. 529, 536, 230 Pac. 779, 781; Quillin v. Colquhoun, 42 Idaho 522, 247 Pac. 740, 741.

In Rau v. Northern Pacific R. Co., 87 Mont. 521, 539, 289 Pac. 580, 585, this court in affirming the action of the trial court in sustaining a motion for a nonsuit by defendant said: "However, when, as in the action now before us, 'the plaintiff's own case presents evidence which, unexplained, makes out *prima facie* contributory negligence upon his part, there must be further evidence exculpating him or he cannot recover. [Citing many authorities in support thereof.]' " Grant v. Chicago, etc., R. Co., 78 Mont. 97, 252 Pac. 382, 385.

In Morton v. Mooney, 97 Mont. 1, 33 Pac. (2d) 262, 266, this court in reversing a verdict for plaintiff among other things said: "While the jurors are the sole judges of the facts, the question as to whether or not there is substantial evidence in support of the plaintiff's case is always a question of law for the court (Grant v. Chicago, etc., Ry. Co., 78 Mont. 97, 252 Pac. 382), and, in determining this question, 'the credulity of courts is not to be deemed commensurate with the facility or vehemence with which a witness swears. "It is a wild conceit that any court of justice is bound by mere swearing. It is swearing creditably

that is to conclude its judgment." ' ". Casey v. Northern Pac. R. Co., 60 Mont. 56, 198 Pac. 141, 145.

In Casey v. Northern Pac. R., supra, the court in reversing the verdict for plaintiff said: "Whenever the surrounding circumstances make the story of a witness highly improbable or incredible, or whenever the testimony is inherently impossible, a new trial should be ordered. Physical conditions may point so unerringly to the truth as to leave no room for a contrary conclusion based on reason or common sense, and under such circumstances the physical facts are not affected by sworn testimony which in mere words conflicts with them. Groth v. Thomann, 110 Wis. 488, 86 N. W. 178." See also First State Bank of Thompson Falls v. Larson, 65 Mont. 404, 211 Pac. 214, 217; Whitney v. Bertoglio Mercantile Co., 65 Mont. 358, 211 Pac. 323, 325; State v. Vettere, 76 Mont. 574, 593, 248 Pac. 179, 185; Grant v. Chicago, etc., Ry., 78 Mont. 97, 252 Pac. 382, 385; State v. Gunn, 85 Mont. 553, 560, 281 Pac. 757, 759; Boepple v. Mohalt, 101 Mont. 417, 433, 54 Pac. (2d) 857, 861; Cook-Reynolds Co. v. Beyer, 107 Mont. 1, 9, 79 Pac. (2d) 658, 661; State v. Jolly, 112 Mont. 352, 357, 116 Pac. (2d) 686, 688; Cullen v. Peschel, 115 Mont. 187, 195, 142 Pac. (2d) 559, 562.

Under the above authorities the trial court erred in refusing to grant defendants' offered instruction No. 11, reading as follows: "You are instructed that if you find from a preponderance of the evidence in this case that the car owned by Mr. Moore was stopped or parked upon the main traveled portion of the highway without adequate warning signals to approaching motorists, and that the plaintiff was standing upon the main traveled portion of said highway while said car was so parked, the plaintiff was guilty of negligence per se. If you find that the plaintiff was negligent per se and that such negligence was the proximate cause of the injuries of which the plaintiff complains, your verdict must be for the defendant."

Another question was raised by the appellants' objection to plaintiff's instruction No. 10½ given by the court as the court's instruction No. 30 and reading as follows: "You are instructed

that if you believe from a preponderance of the evidence herein that the plaintiff is entitled to recover damages from the defendants then you may award to the plaintiff:

"1. Special damages in such sum as will in your judgment compensate him for his hospital and physician's expenses, expenses for medical supplies and for loss of wages, in no event however to exceed the sum of One Thousand Eight Hundred Fifty-three and 90/100 Dollars ($1,853.90).

"2. General damages in such sum as will compensate plaintiff for the injury sustained, in no event however to exceed the sum of One Thousand Dollars ($1,000).

"The total amount of damages must not in any event exceed the sum of Two Thousand Eight Hundred Fifty-three and 90/100 Dollars ($2,853.90)."

Defendants objected to such instruction "in that it does not limit the damages assessed against the defendant Ingolf Jacobsen in the sum of $500.00."

Error was duly assigned and argued on the overruling of defendants' objection and the giving of the instruction. The record shows that in his complaint the plaintiff demanded the sum of $1,853.90 special damages and $1,000 general damages or a total of $2,853.90 against both the son Soren Jacobsen who was 17 years old at the time of the accident and his father Ingolf Jacobsen. The father was joined because he signed his son's application for a driver's license as required by R. C. M. 1947, sec. 31-131, originally enacted as Chapter 267, Laws of 1947, the title whereof, inter alia, reads: "Providing for the Liability of Such Parents, Guardian or Other Person".

Subdivisions (b) and (c) of said section 31-131, supra, provide: "(b) Any negligence or wilful misconduct of a minor under the age of eighteen (18) years when driving a motor vehicle upon a highway shall be imputed to a person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or wilful misconduct

(except as otherwise provided in sub-paragraph (c) of this section).

"(c) In the event a minor deposits or there is deposited upon his behalf *proof of financial responsibility* in respect to the operation of a motor vehicle owned by him, or if not the owner of a motor vehicle, then with respect to the operation of any motor vehicle, in form *and in amounts as required under the motor-vehicle financial responsibility laws of this state,* then the board may accept the application of such minor when signed by one parent or the guardian of such minor, and while such proof is maintained such parent or guardian shall not be subject to the liability imposed under subparagraph (b) of this section." Emphasis supplied.

R. C. M. 1947, secs. 53-401 and 53-402, are a part of Chapter 4, Volume 3, of the Revised Codes of 1947, and were originally enacted as Chapter 129, Laws of 1937, the title whereof states that the Act related to "Financial Responsibility of Motor Vehicle Owners and Operators". This is evidently the law referred to in subdivision (c) of section 31-131 quoted above.

The title to an Act may be considered to aid in the construction of such legislative Act. Morrison v. Farmers', etc., State Bank, 70 Mont. 146, 151, 225 Pac. 123; State ex rel. Board of County Com'rs of Valley County v. Bruce, 106 Mont. 322, 332, 77 Pac. (2d) 403.

In subdivision 1 of said section 53-402, *inter alia,* it is provided: "* * * nor shall any such license be thereafter issued to him or any motor vehicle be thereafter registered in his name until he shall have given proof of his ability to respond in damages for any liability thereafter incurred, resulting from the ownership, maintenance, use or operation thereafter of a motor vehicle for personal injury to or death of any one person in the amount of at least five hundred dollars ($500.00), and, subject to the aforesaid limit for any one person injured or killed, of at least one thousand dollars ($1,000.00) for personal injury to or the death of two or more persons in any one accident, and for damage to property in the amount of at least two hun-

dred and fifty dollars ($250.00) resulting from any one accident. Such proof in said amounts shall be furnished for each motor vehicle registered by such person."

R. C. M. 1947, sec. 53-403, twice refers to the amount of damages as stated in section 53-402. Section 53-404, subdivision 5, refers to the amount specified in section 53-402, supra.

Subdivision 2 of said section 53-403, in part reads: "When, subject to the limit of five hundred dollars ($500.00) for any one person so injured or killed, the sum of one thousand dollars ($1,000.00) has been credited upon any judgment or judgments rendered in excess of that amount for personal injury to or the death of more than one person as the result of any one accident * * *."

R. C. M. 1947, secs. 53-401 to 53-417, were repealed by section 36 of Chapter 204, Laws of 1951, and the new law is now sections 53-418 to 53-458 of the 1953 Cumulative Supplement. However, by the provisions of said section 36 of said Act that law does not apply to accidents such as here involved which occurred on November 18, 1950, and prior to the enactment of the statute.

Respondent cited two California cases, Sleeper v. Woodmansee, 11 Cal. App. (2d) 595, 54 Pac. (2d) 519, 521, and Easterly v. Cook, 140 Cal. App. 115, 35 Pac. (2d) 164, construing the California statutes of 1923, page 532, as amended by the Statutes of 1929, page 522, which amended section 62 of the California Act, but such section is not like section 31-131, R. C. M. 1947, supra; as the California statute does not contain the words "in form and in amounts as required under the motor-vehicle financial responsibility laws of this state," as is provided in the Montana statute.

The majority opinion cites the California decisions in support of its holding that the father was also liable for the total damages. It also cites Rogers v. Wagstaff, Utah, 232 Pac. (2d) 766, but such decisions do not construe any statute like sections 53-402 to 53-404 of the Montana Code.

In my opinion, had the plaintiff Moore and the two men accompanying him exercised the same good judgment in oper-

ating their Studebaker as was displayed by the youthful defendant Soren Jacobsen and the two younger boys who accompanied him in operating their Nash, the accident could not have happened and the plaintiff would not have been injured.

After the accident had happened when rendering first aid to the plaintiff and preparing to rush him back to Fairview for medical attention, the three boys displayed the good judgment of first taking time to push the Studebaker off the road so that it would no longer endanger motorists rightfully traveling thereon.

The fault in this case lies with the plaintiff and his two rollicking companions who had spent their evening in a bar and not with the three stone sober boys who had spent their evening at a movie.

The boys were "clicking,"—the plaintiff and his companions were not.

The undisputed testimony of the plaintiff and his witnesses shows the plaintiff to have been guilty of negligence which was a proximate and contributing cause of his injuries.

Such negligence consisted: In driving or permitting plaintiff's companion to drive when both were intoxicated; in stopping plaintiff's automobile or permitting it to be stopped in the middle of that portion of the road reserved for west bound vehicles and traffic; in ordering and causing all the auto lights of plaintiff's car to be turned off; in failing to push plaintiff's car off the road before "tinkering" with it; in failing to have either of his companions take a position to the rear of plaintiff's car for the purpose of flagging and warning drivers of westbound vehicles of the presence of the stalled car in the road, and in failing to take any steps whatever toward warning other drivers rightfully using the road, of the presence thereon of the unlighted Studebaker so parked in the right-hand driving lane of the road.

There is ample evidence that the above acts and omissions of the plaintiff were the proximate cause of the accident.

The defendant Ingolf Jacobsen was not in the car at the time

364

of the accident nor is there any evidence that the Nash was being operated for the father or on the father's business. His liability was solely that of a father who had signed his son's application for a license to operate a motor vehicle, which liability under the Montana statute could not exceed the sum of $500 for the reasons above stated.

In my opinion, under the law of Montana as applied to plaintiff's evidence, the money judgment entered for plaintiff should be reversed, the trial court's order denying a new trial should be set aside, a new trial should be granted, and, for such purposes, the cause should be remanded to the district court.

MR. JUSTICE BOTTOMLY, concurs in the foregoing dissent.

On Motion for Rehearing.

MR. JUSTICE ANGSTMAN:

Neither the motion for rehearing nor the dissenting opinion present anything that was overlooked by the majority members of the court who joined in the original opinion.

The vice of the dissenting opinion is that it substitutes the views of the author for those of the jury as to the proximate cause of plaintiff's injuries. The jury was warranted in finding from the evidence that plaintiff's drinking did not contribute to his injuries and was warranted in finding that the absence of the lights on his car at the time of the impact was not the proximate cause of his injuries.

On the other hand the jury was justified from the evidence in finding that defendant Soren Jacobsen's negligence was the proximate cause of plaintiff's injuries. There was evidence that the road contained some spots of ice. There was not sufficient ice to prevent control of a car.

Plaintiff's car came to a stop by coasting. On that point plaintiff testified: "Q. Did you coast to a stop, or did you apply your brakes? A. I coasted to a stop."

Likewise after the impact defendant had no difficulty in stopping his car. He stopped it within 150 feet of where the im-

pact took place. The jury was warranted in finding it was negligence on the part of Soren Jacobsen not to take some means of slowing up the speed of the car he was driving before running into plaintiff.

He testified that he did not apply the brakes and as far as the record shows he did nothing to slow down his speed. He gave no warning to plaintiff of his approach. Plaintiff was dragged or thrown about 35 or 40 feet from the place of impact.

It should be said too, that the lights on plaintiff's car were on until plaintiff got ready to hook the trouble light on the battery and then they were turned off.

One witness for plaintiff testified that only about 15 seconds elapsed after they were turned off until plaintiff was struck. Obviously defendant Soren Jacobsen should have observed the stalled car long before he did had he used proper care. From the brow of the hill to the parked car was shown to be 700 feet.

It is true that the evidence shows that lights on the defendant's car would not be focused on the parked car until it was within 150 feet from it. But while the lights on plaintiff's car were on defendant should have seen the car when within 700 feet from it,—that being the visible distance between the parked car and the top of the hill as shown by measurements.

The evidence was such that it was a matter for the jury to determine whose negligence was the proximate cause of plaintiff's injuries. The learned trial judge heard all the evidence and observed the witnesses and he did not see fit to disturb the verdict of the jury and neither are we justified in substituting our opinion for that of the jury.

The dissenting opinion takes the view that the court erred also in not limiting the liability of defendant Ingolf Jacobsen to $500. The dissenting opinion fails to point out where there is anything in the record to indicate that there was deposited any place or any time proof of financial responsibility in respect to the operation of the car by defendant Soren Jacobsen as provided

in paragraph (c) of sec. 31-131 and hence subdivision 1 of sec. 53-402, R. C. M. 1947, has no application.

The motion for rehearing is denied.

ASSOCIATE JUSTICES FREEBOURN and ANDERSON, concur.